THE UNITED STATES ROLLING STOCK COMPANY

*v.*

CONRAD WILDER.

*Filed at Ottawa January 25, 1886.*

1. NEGLIGENCE — *contributory negligence — under what condition of proof the court should instruct on that subject.* In an action based on negligence of the defendant, proof of the negligent acts or omissions charged in the declaration, which fails to show negligence by the plaintiff, establishes a *prima facie* right of recovery; and it is incumbent on the defendant to show such negligence in the plaintiff as will defeat a recovery, or at least offer some evidence tending to prove it, in order to warrant the court in giving an instruction relating to contributory negligence.

2.  SAME—MASTER AND SERVANT—*of the risks the latter assumes, generally.* A servant, in entering upon an employment, assumes, generally, only such risks as he has notice of, either express or implied. Some are so obvious that notice of them will be presumed. When there are special risks, of which the servant is not, from the nature of the employment, cognizant, or which are not patent, it is the duty of the employer to notify him of them, and on failure to do so, if the servant is injured by exposure to such risks, he is entitled to recover from his employer.

3.  SAME—*servant assuming risk as to competency of fellow-servants— duty of the master in that regard.* One employed in a service is not bound to investigate, and find out at his peril whether the common master has used reasonable care in the selection of those already employed in the same branch of service, but on the contrary, he is warranted in assuming that his employer has discharged his duty in that respect, and until notice to the contrary is brought home to such servant, he may act upon such supposition.

4.  All the law demands of a servant entering a hazardous service, is to observe what is passing, and avail himself of such information as he may receive in respect to the talents and characteristics of his fellow-servants; and if, from any source, he finds any of them incompetent, so that his position is extra hazardous, it is his duty to notify his employer, and if the latter fails to discharge the incompetent or unfit servant, he should quit the master's employment, otherwise he will be deemed to have assumed the extra hazard of his position. In that case there will be mutual negligence on the part of both the master and the servant.

5.  The risk as to the negligence of a fellow-servant is subject to the qualification that the master is not to knowingly employ or retain incompetent or habitually negligent co-servants, and that he is not to permit to be used in his business, defective machinery, whereby the ordinary dangers of the service are increased. The extra hazards resulting from the master's failure to perform his duty to his employes, do not come within the risk which the latter assumes, and for an injury resulting from them, or such as are not obvious, and of which the servant has not notice, the master is liable.

6.  In such a case it is no answer to an action to say that the servant might, by the exercise of proper diligence, have ascertained that the master was conducting his business in disregard of a positive duty which he owed to his servant.

7.  INSTRUCTION—*should be based on evidence.* All instructions to a jury should be based upon evidence from which it legally and logically results, and it is not error to refuse one which announces a mere abstract proposition of law not suggested or warranted by the evidence in the case. On the other hand, it is error to give such an instruction when the giving of it will have a tendency to mislead the jury; but if the reviewing court can see, from the nature of the case, that it had no such tendency, though improperly given, it will afford no ground of reversal.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This action was brought in the Superior Court of Cook county, by Conrad Wilder, the appellee, against the United States Rolling Stock Company, the appellant, to recover damages for the loss of the plaintiff's hand, which is alleged to have been occasioned by the negligence of the company in retaining in its employ an incompetent and unskillful engineer, after notice of such unskillfulness and incompetency.    There was a trial in the Superior Court on the merits, resulting in a verdict and judgment for plaintiff of $5000, which was affirmed by the Appellate Court for the First District, and the company brings the case here for review.

Mr. C. D. ROYS, Mr. WM. B. KEEP, and Mr. J. C. HUTCHINS, for the appellant:

A railway company is not liable because the man who is conductor of its train is not competent to conduct the management of its entire railway.    It is sufficient if he is competent to do the work for which he was employed.    *Gilbert* v. *Railroad Co.* 46 Mich. 176; *Railroad Co.* v. *Dolan*, 32 id. 519.

The law presumes that one entering a service had knowledge of its ordinary hazards, and of the need and means of performance of the business.    *Railroad Co.* v. *Flanigan*, 77 Ill. 365; *Richardson* v. *Cooper*, 88 id. 112; *Railroad Co.* v. *Durkin*, 76 id. 395.

In actions of this sort, specific acts of negligence, when known to the master, are admissible for the purpose of determining the character of the servant who is alleged to be incompetent, but do not prove, or tend to prove, that at the time of an accident such servant was in fact negligent.    *Moss* v. *Railroad Co.* 49 Mo. 167; *Railroad Co.* v. *Milliken*, 8 Kan. 647; *Blake* v. *Railroad Co.* 70 Me. 60; Pierce on Railroads, 374, 379.

If a servant remains in the service after knowledge of defects in the road or machinery, or the incompetency of a fellow-servant, or when he has reasonable opportunity to learn the same, he will assume the risks incident to that state of facts.    Shearman & Redfield on Negligence, sec. 94; Thompson on Negligence, 1008, 1016, 971; *Williams* v. *Clough,* 3 H. & N. 258; *Hayden* v. *Manufacturing Co.* 29 Conn. 348; *Cagney* v. *Railroad Co.* 69 Mo. 416; *Wright* v. *Railroad Co.* 25 N. Y. 562.

The above cases, and also the following, hold that if the servant has the same knowledge, or means of knowledge, that the master had, he can not recover.    *Haskin* v. *Railroad Co.* 65 Barb. 129; *Thayer* v. *Railroad Co.* 22 Ind. 29; *LeClair* v. *Railroad Co.* 20 Minn. 9; *Railroad Co.* v. *Barber,* 5 Ohio St. 541; *Greenleaf* v. *Railroad Co.* 29 Iowa, 46; *McMillan* v. *Railroad Co.* 20 Barb. 449; *Davis* v. *Railroad Co.* 20 Mich. 105.

Mr. MARTIN BEEM, and Mr. D. F. FLANNERY, for the appellee:

A servant is not bound to inquire or to ascertain his co-servant's habits or qualities as a servant, but is bound to see what transpires in his presence.    Nor is he bound to search for latent defects in machinery.    Wood on Master and Servant, 803, sec. 419; Pierce on Railways, 381; *Railroad Co.* v. *Swett,* 45 Ill. 203.

To have an incompetent, reckless or careless man in charge of the lives of others, is an act of negligence for which the master employing him, who is bound to know the qualifications of his employes, is responsible.    Shearman & Redfield on Negligence, sec. 90; *Railroad Co.* v. *Jewell,* 46 Ill. 99.

The master must use all reasonable precautions to select capable and prudent fellow-servants, (*Richardson* v. *Cooper,* 88 Ill. 373,) and to furnish suitable and safe machinery. *Railway Co.* v. *Fredericks,* 71 Ill. 294.

It is not the business of the servant, nor has he the means of ascertaining, whether the machinery or structure upon which he is employed to operate, is defective. It is the duty of the master to furnish these appliances. *Porter* v. *Railway Co.* 60 Mo. 160.

Where the reckless or negligent habits of a servant have been acquired subsequent to his employment, the master having no knowledge of the same, and the reckless or negligent acts happen in the presence of the injured servant, under such circumstances that there is a greater probability that the latter knew of them than the master, the master will not be liable. *Davis* v. *Railroad Co.* 20 Mich. 105.

The rule applies where the defective appliance is under the special care of the servant, and it is his business,—one of the duties of his employment,—to see that it is in a fit condition for use, in which case the servant has a better opportunity of knowing of the defect than the master. *Railroad Co.* v. *Jewell,* 46 Ill. 99 ; *Railway Co.* v. *Jackson,* 55 id. 492.

Instructions which impose upon a master a liability for the negligent acts of his servant, because he employed the servant knowing him to be incompetent, or because he might have known of his incompetency by the exercise of reasonable care, should be qualified simply by the injured servant's knowledge of the incompetency. But if it was a part of the duties of the injured servant's employment to know it, the instruction should be further qualified by making him equally negligent with the master if they had equal facilities for knowing of the incompetency, in which case the injured servant could not recover. *Railroad Co.* v. *Jewell,* 46 Ill. 99 ; *Railway Co.* v. *Jackson,* 55 id. 495 ; *Railroad Co.* v. *Flanigan,* 77 id. 371 ; *Railroad Co.* v. *Swett,* 45 id. 203 ; *Railroad Co.* v. *Fredericks,* 71 id. 294 ; *Pennsylvania Co.* v. *Lynch,* 90 id. 333 ; *Gibson* v. *Railway Co.* 46 Mo. 163 ; *Porter* v. *Railway Co.* 60 id. 160.

Mr. CHIEF JUSTICE MULKEY delivered the opinion of the Court:

This cause is now before us the second time for consideration. When first before us, the conclusion was reached that the Appellate Court properly affirmed the judgment of the trial court, and a short opinion was filed to that effect. A rehearing was subsequently granted on the ground some of the members of the court were in doubt as to whether the trial court did not err in striking out the concluding words of the defendant's fifth instruction. That instruction tells the jury there can be no recovery in the case "unless the jury find, from the evidence, that the engineer in charge of the locomotive was incompetent to perform such service, and that the defendant company knew, or by reasonable diligence might have known, of such incompetency, and not even then unless you further believe, from the evidence, that the plaintiff did not know of such incompetency, *and did not have equal facilities with the defendant for acquiring such knowledge.*" After the words in italics were stricken out, the instruction thus modified was given to the jury, and it is contended this was error.

Conceding the instruction, as asked, to be correct as an abstract proposition of law, does it necessarily follow that it should have been given to the jury unless there was some evidence upon which to base it? It is an elementary principle of universal application, that all instructions to a jury should be based upon evidence from which it legally and logically results,—that it is not error to refuse an instruction which announces a mere abstract proposition of law not suggested or warranted by the evidence in the case. On the other hand, it is error to give such an instruction where the giving of it will have a tendency to mislead the jury. If, however, where such an instruction is given, the reviewing court is able, from the nature of the case, to say that it had no such tendency,

then, though improperly given, it will afford no ground for reversal. These several propositions have often been recognized by this court, and if it be possible to settle anything by judicial decisions, they may be regarded as the settled law of this court. Thus it is said in *Keeler* v. *Stuppe*, 86 Ill. 309: "The sole function of instructions is to give the law applicable to the case, in clear and intelligible language." Again, in *Baxter* v. *The People*, 3 Gilm. 368, it is said: "The object of instructions is to convey to the minds of the jury correct principles of law as applicable to the evidence which has been laid before them. Nothing should be given them unless it will promote that object." So in *Atkinson* v. *Lester*, 1 Scam. 407, it is said: "Mere abstract propositions of law which do not refer to the evidence in the cause should not be given as instructions." But it is said in *Corbin* v. *Shearer*, 3 Gilm. 482, that a case will not be reversed "because of the giving of such instructions, unless it appears that they improperly influenced the jury." We might go on almost indefinitely citing cases in this court which fully sustain the propositions above stated, but it is not necessary to do so. We will simply refer in this connection to the following additional cases, which are directly in point: *McNair* v. *Platt*, 46 Ill. 211; *Lander* v. *The People*, 104 id. 248; *Devlin* v. *The People*, id. 504; *Heaton* v. *Kemper*, 2 Scam. 367; *Nealy* v. *Brown*, 1 Gilm. 10.

The defendant, it will be perceived, is charged with negligence in the selection and hiring of an incompetent engineer, and also in suffering and permitting such incompetent engineer to manage, control and operate its cars and engine. It was sufficient, under the pleadings, to entitle the plaintiff to recover, to prove negligence in either of the respects charged. Whatever may be said in respect to the first branch of the subject, the decided weight of evidence shows that Guernsey, the defendant's engineer, was incompetent, and that the defendant had, at the time of and during plaintiff's employment,

notice of this fact.    Guernsey was first employed by the defendant in the capacity of a truck repairer, and was promoted from that position to the more responsible one of engineer, upon his own recommendation.    He entered the defendant's service in May or June, 1880, and the attention of the company was frequently called to his incompetency.    It is true, Cary, foreman, and Stagg, superintendent of the company, thought him competent for the position he occupied.    As they were probably personally responsible to the company, both for his employment and retention, it is not a matter of surprise that they should so consider him.    So far as Cary is concerned, he might safely say this, for he evidently thought his position required little or no skill, for in answer to the inquiry if it did not require as much skill to run the company's engine as any other, he says:  "No, sir.    I will say that it does not require any but an ordinary man.    A very ordinary man can do it in our yard.  *  *  *  A man that is competent to keep the water up, and keep his pumps going, can do our work."    Without dwelling further upon the facts, we will add, in general terms, that the witnesses for the plaintiff make out a strong case of inexcusable negligence against the defendant in retaining Guernsey as engineer of the company.

It will be understood that in thus discussing the facts it is not for the purpose of reviewing the judgment of the lower court upon them, but with the sole view of presenting a conclusive reason why the judgment of that court should not be disturbed for any supposed technical error not affecting the merits, as another trial would in all probability result the same way.

Recurring now to the modification of the instruction complained of, let us examine with some particularity the grounds upon which the action of the trial court in respect to it is assailed.    The position of appellant, as we understand it, is, that the trial court should, by the instruction in question,

have submitted to the jury the question whether the appellee, by the exercise of reasonable care and diligence, might have known or learned that the engineer was an incompetent person. Assuming this to be so, the question then arises, what evidence is there in the record that can with any degree of propriety be said to raise this question?—for it is to be borne in mind that no question should in any case be thus submitted which does not fairly arise out of the evidence. It is the true and proper function of the jury to determine what the evidence proves upon every question submitted to them, and if there is no evidence on a particular question involved in the pleadings, or raised by counsel in argument, it follows there would be nothing for the jury to consider or determine with respect to that particular question. Any instruction, therefore, relating to it, would necessarily be nothing more than a mere abstract proposition of law, and for that reason should not be given.

The simple facts in this case, so far as they may be supposed to have even the remotest bearing upon the question under consideration, are, that at the time of plaintiff's employment as switchman the defendant then had in its service an unskillful and incompetent engineer, which fact was well known to the defendant; that within the short space of six working days after his employment, the plaintiff, while acting with due care in the line of his duty, received a serious injury upon the hand, occasioned by the negligence and incompetency of the engineer, which, after appellee's submitting to two surgical operations, resulted in the loss of his hand. These are the facts,—nothing added, nothing omitted. The appellant does not claim that the incompetency of the engineer was known, or might have been known, to appellee, by the exercise of ordinary care, and no evidence is offered to prove such a hypothesis, but on the contrary its claim is, that the engineer was competent, careful, skillful; and yet, strange to say, and inconsistently as it may appear, this court is asked to reverse

the case because the trial court refused to submit the question to the jury, whether the plaintiff, by the exercise of reasonable diligence, might not have discovered the engineer's incompetency,—a fact which the appellant itself earnestly maintains has no existence.   If, as appellant's witnesses swear, the fact had no existence, how could appellee, by any degree of care or watchfulness on his part, have discovered it?   If there were any proof in the record tending to show that appellant or any other person, prior to the time of the accident, informed appellee of the incompetency of the engineer, or if it appeared the engineer had, during appellee's few days' service, been guilty of previous acts of negligence, from which the latter could have reasonably inferred the engineer's general incapacity, it might then with propriety be contended that the instruction, as originally drawn, should have been given.   But there is absolutely nothing of this kind in the record.   The plaintiff, by proving the facts above stated, without disclosing any negligence on his own part, as he clearly did, established a *prima facie* right of recovery. If, therefore, the plaintiff, as matter of fact, was guilty of such contributory negligence as would defeat a recovery, it devolved upon the defendant to prove it, by way of defence, or at least to offer some evidence tending to prove it, before the court would have been warranted in giving an instruction relating to contributory negligence.

The contention of appellant, as we understand it, is, that where one is employed as an operative in a particular branch of service, he is bound to investigate, and find out, at his peril, whether the common master has used reasonable care and prudence in the selection of those already employed in the same branch of service.   The law imposes no such duty. One thus employed is warranted in assuming that the master has discharged his duty in this respect, and until notice to the contrary is brought home to the employe, he may safely act upon that hypothesis.   All that the law demands of one

thus employed is, that he keep his eyes open to what is pass-
ing before him, and avail himself of such information as he
may receive with respect to the habits and characteristics of
his fellow-servants, and if, from either of these sources of in-
formation, he finds one of them, from incompetency or other
cause, renders his own position extra hazardous, it is his duty
to notify the master, and if the latter refuses to discharge
the incompetent or otherwise unfit fellow-servant, the com-
plaining servant will have no alternative but to quit the mas-
ter's employ.    If he does not, he will be deemed to have
assumed the extra hazard of his position thus occasioned.
The case suggested, it will be perceived, is one of mutual
negligence.    On the part of the master, it is negligence to
retain the derelict servant in his employ.    It is, on the other
hand, negligence in the complaining servant to continue longer
in the master's service unless he intends to assume the extra
risk himself.

The authorities cited by appellant on this branch of the
case are not at all in point.    Thus, the case of *Chicago, Rock
Island and Pacific Railroad Co.* v. *Clark*, 108 Ill. 113, is
given much prominence in counsel's argument.    That was an
action brought by Mrs. Clark against the company for neg-
ligently causing the death of her husband, who was in the
employ of the company as a brakeman at the time of the
accident which caused his death.    The deceased, at the time,
was making a coupling after night, in front of a platform
near the side-track upon which the train was standing, and
in doing so he became entangled with a lantern in his hand,
which, coming in contact with the moving train, was so
pressed up against him in his position between the cars and
the platform, as to cause internal injuries from which he died.
The negligence charged was, that the track was built too near
the platform, the distance being only some ten inches.    The
negligence complained of in that case, assuming there was
negligence, was not at all, as is manifest, like the negligence

charged in this. In that case the proximity of the track to the platform was open and visible to all persons having occasion to be there, and especially to brakemen on the road, and had so been for fourteen years past. Whatever danger resulted from the proximity of the track to the platform must necessarily have been as well known to the deceased as to the company or any of its officers, and hence there was no right of recovery. Here the facts are altogether different, and call for the application of different principles. While that case was clearly decided properly, yet, as is not infrequently the case, there are things said in the opinion by way of argument that are not accurate when considered as abstract propositions, and they must therefore be confined to the particular facts then before the court. Thus, among other things, it is said in effect in that case, that the master is not required to inform his servant of dangers pertaining to his duties. This is true as to dangers which are obvious, and which the servant would necessarily see, as was the case there. It is also true of the ordinary dangers pertaining to a particular service, and which all persons who engage in it are presumed to know. But the statement is far from being universally true.

The true rule on this subject is well stated in Wharton on Negligence, section 206. It is there said, that a "servant generally assumes only those risks of which he has express or implied notice. Some risks are so obvious that notice of them will be presumed. Where there are special risks in an employment, of which the employe is not, from the nature of the employment, cognizant, or which are not patent in the work, it is the duty of the employer to notify him of such risks, and on failure of such notice, if he is hurt by exposure to such risks, he is entitled to recover from the employer." Now, while negligence of a fellow-servant is one of the ordinary risks which an employe assumes when entering into the service of another, yet this risk is subject to the qualification

the master is not to knowingly employ or retain incompetent or habitually negligent servants; nor is he to permit to be used, in his business, defective machinery, whereby the ordinary dangers of the service will be enhanced. These extra hazards, which result from the master's failure to perform his duties to his employes, do not come within the risks which the latter assume as a part of their contract of service. For all such extra hazards resulting in injury to the servant, which are not obvious, and of which the servant has no notice, the master is liable. And in such case, it is no answer to an action to say, as is alleged here, that the plaintiff might, by the exercise of proper diligence, have ascertained the defendant was conducting his business in disregard of a positive duty which he owed the plaintiff, as his servant. If in such case, however, an employe, after notice of the extra risks thus occasioned, continues in the master's service, it will be at his own peril, for the law, in such case, will presume that he intended to assume them, otherwise he would have quit the master's service. The law on this branch of the subject is well stated in the late case of *Stafford* v. *Chicago, Burlington and Quincy Railroad Co.* 114 Ill. 244.

After availing ourselves of all the additional light afforded by the rehearing allowed in this case, we are satisfied with the conclusion heretofore announced in it, and also with the general views expressed in the opinion therein filed.

*Judgment affirmed.*