# THE HERDMAN-HARRISON MILLING COMPANY

## v.

## LOUIS SPEHR, BY NEXT FRIEND, ETC.

*Practice—Motion for New Trial—Exception to Decision on, Necessary —Master and Servant—Action for Personal Injury—Degree of Care Required of Minor, Question for Jury—Instructions.*

1. Where the bill of exceptions does not show that an exception was taken to the decision of the trial court overruling a motion for a new trial, this court can not inquire whether the verdict was authorized by the evidence.

2. In the absence of express contract the employer is impliedly bound to use ordinary care to provide a place, and implements and machinery, in and with and about which the employe is to work, so that with ordinary care on his part it will be reasonably safe for him, and to give notice of all the dangers incident to the service of which the servant is not cognizant and the employer is, or ought to be cognizant.

3. An employe of full age and sound mind may waive the performance of these duties and does waive it as to all the dangers which he knows, by voluntarily incurring them; but employes lacking ordinary capacity do not so waive the performance of these duties on the part of the master.

4. Infancy at any stage is a fact having some tendency to prove incapacity, to a greater or less extent according to age. It is for the jury

to determine its weight and whether it is overcome, and to decide each case on its merits and by its particular circumstances.

5.  Where the employe by reason of youth lacks capacity, the employer has no right to expose him even to patent danger, and with his own consent, but should guard the danger, or supplement his capacity by special instructions such as will enable the youth, by the exercise of ordinary care in view of such instructions, to avoid it.

[Opinion filed  April 11, 1892.]

Appeal from the Circuit Court of Christian County; the Hon. J. Fouke, Judge, presiding.

Messrs. Palmer & Shutt and Ricks & Creighton, for appellant.

Messrs. A. McCaskill & Son and John G. Drennan, for appellee.

Mr. Justice Pleasants. Appellee, when about fifteen years of age, was put at work in appellant's roller mill, to keep it clean and to dust and oil the machinery therein.  On the 16th of April, 1888, about eighteen months after he began, while dusting about a Stevens roll and the differential gear connected with it, which was uncovered and in motion, making some 400 revolutions per minute, the short broom he used was somehow caught between the cogs of the co-acting wheels and thereby his hand also was instantly pulled in and so mangled as to require its amputation.  For that injury this action was brought, tried by a jury and resulted in a verdict and judgment for $2,250 damages.

The declaration averred that this machinery running uncovered was dangerous to persons working or being about it, and that plaintiff was a minor, of tender years, without experience and incompetent of himself to comprehend the dangers attending the work mentioned; and the wrong charged was that defendant employed and required him to do it, without covering said gear or giving him instruction and caution respecting said dangers.   Under the pleadings

the burden of proof, as to all the material averments in the declaration, was upon the plaintiff, and the first ground on which a reversal of the judgment is urged is that the evidence failed to show that plaintiff was a servant of defendant, or that the machinery in question was dangerous, or that the injury was not due to his own carelessness. Rightly assuming that the jury must have found these facts, it is contended that there was no evidence, or not enough, to support such finding.

Whether the evidence is sufficient is always a question for the jury alone in the first instance. It can not arise for decision by the court before that for the plaintiff is all in, and ordinarily does not, as in this instance, until after verdict, on motion for a new trial. When it does arise and is decided, the decision of that question, as of others properly before the court, is final unless excepted to. In this case the bill of exceptions shows a motion by defendant for a new trial overruled, but fails to show that to the decision overruling it any exception was taken. In Law v. Fletcher, 84 Ill. 45, the Supreme Court say: "We can not inquire whether the verdict was unauthorized by the evidence, for the reason that the bill of exceptions fails to show that a motion for a new trial was made by appellant and overruled by the court and proper exception taken thereto by appellant," — citing a number of cases. In St. L., A. & T. H. R. R. Co. v. Dorsey, 68 Ill. 326, the court for the same reason refused to consider the assignment for error that the verdict was contrary to the law. That reason, however, would not prevent its consideration of errors in admitting or excluding evidence or in giving or refusing instructions, if properly excepted to at the time of the ruling, because it can not be known how the jury would have found if such error had not intervened. Pottle v. McWorter, 13 Ill. 454; Boyle v. Levings, 28 Ill. 314; Drew v. Beal, 62 Ill. 164. But in the argument for appellant it is not claimed that any improper evidence was admitted or any proper evidence excluded. The only complaint of error, besides that above noticed, is in respect to the giving and refusing

Herdman-Harrison Milling Co. v. Spehr.

of instructions; and the question is whether there was any error in that respect that was likely to mislead the jury in their finding upon any material issue.

That there was danger from this machinery to those working about it is beyond doubt, and that plaintiff knew nothing of it except what he observed and inferred from its construction and operation, was fully proved. The only controverted questions of fact were whether he was in the employ of the defendant, and whether he used due care for his own safety. Upon each of these questions there was evidence on both sides; and it is somewhat singular that upon the first, as well as upon the second, it was all circumstantial. Usually the contract or arrangement for the employment shows directly and unmistakably who is the master; but not so here. It appears that appellee's father was appellant's head miller, having charge of the mechanical operations of the mill, and control and direction under appellant, of the other employes therein. Besides his proper work, as such, he was to keep the mill "clean" — with special reference, as we understand, to one of the conditions of its insurance—for which he received as *extra* compensation, the sum of $3.50 per week. Desiring that his son, the appellee, should learn the business he followed, he applied to Mr. Harrison, the president of the company, to have him employed to dust and oil the machinery and keep the mill clean; and whatever was the arrangement it was made by them. The father was disabled by sickness for several months before the injury and died before this suit was commenced. His testimony was not obtained. Mr. Harrison could not remember the exact language used, but only the substance, and stated it as follows: "Spehr said he had a boy that he wanted to take into the mill to learn the trade. I told him we didn't want a boy; he was liable to get hurt. He said we needn't feel uneasy about that, he would release us from all responsibility in case of accident, if we would take the boy in to learn the trade; he wanted us to let him have the job to keep the mill clean. We were to allow him the $3.50 a week Mr. Spehr had for cleaning the mill."

Each of them talked to the other members of the company
about it, and the application was at first refused on the
ground stated, of the liability of a boy to get hurt.   Spehr,
however, repeated and pressed it, and on his saying he
would release the company from liability for injury to the
boy and be responsible to it for all damages caused by his
neglect, Mr. Herdman, the general manager, says they
"agreed that he should come in under these conditions.
Harrison was authorized to see the boy, and under that ar-
rangement he should go into the mill and learn the trade."
Harrison did not see him before he went to work, but says
"I consented for the father to put the boy into the mill and
agreed with his father he should be allowed $3.50 per week
when he first went there.   I knew what the father was
going to put him at when he brought him there.   He was
brought there for that purpose and to learn the trade."   By
a later arrangement, which was also asked by the father,
the allowance was increased to $6.00 per week and regularly
included in the company's weekly check to him for his
salary until he became disabled and was succeeded by his
elder son, to whom they were thereafter drawn in like
manner.

Upon these facts it is insisted that appellee was not an
employe of the company but of his father.   We think the
terms of the arrangement do not certainly support this claim;
nor are the further facts that appellee was a minor and
resided with his father and that both had for an object his
learning of the trade, necessarily inconsistent with his claim,
that he was employed by and worked for the company.
He testified that he so understood it, because the company
owned and operated the mill, and Mr. Harrison from time
to time gave him directions about his work, some of which
he specified.   Herdman says it had the right to discharge
him, like any other employe.   It allowed him wages and
paid them.   His father was himself its servant in respect
of the work in question.   It was necessary work, and
highly important to the interests of the company.   It had to
have it done.   He who did it was the company's servant in

respect of it.  With the company's consent he transferred it with all its wages to another.  Did he not thereby transfer the rights and duties of a servant?  Did the company consent that work in which it had so much interest, in its own mill and about its own machinery, should be transferred by its servant, who was subject to its control and direction in regard to it, to anybody not so subject?  Whatever we might think as to the preponderance of the evidence, it clearly showed two sides to this question, which for that reason the court could not properly take from the jury.

In relation to it, three instructions were given as asked by the defendant, the first of which (numbered ten) was as follows:  " The court instructs the jury that if they believe, from the evidence, that the plaintiff's father was a practical, experienced miller and was the foreman of defendant's mill, and that the plaintiff at the time he received the injury was a minor under the control of his father, and his father with the consent of defendant employed the plaintiff in defendant's mill, in order that he might by means of said employment learn the business of a miller, then the defendant is not liable to the plaintiff for the injury complained of in the declaration."  Another which was asked but refused, being the only one that was refused, was in substance the same as the one above quoted, except that it added after the word " miller," as therein last used, the qualification " and that defendant in no other way employed the plaintiff," which made it less favorable to the defendant than the one given, and of the refusal of which it therefore can not complain.  The hypothesis of plaintiff's instructions on this point qualified the phrase " employed by his father," in defendant's by adding, " for the defendant" and as " its agent;" which we think was fairly warranted by the evidence.  We see in them nothing calculated to mislead the jury to the prejudice of the defendant.

The finding upon the other issue, whether plaintiff used due care for his own safety, would depend upon the character of the danger and his capacity; by which is meant the

measure of his ability to comprehend and appreciate the danger and to exercise the discretion required to avoid it. In the absence of an express contract the employer is impliedly bound to use ordinary care to provide a place and implements and machinery in and with and about which the employe is to work, that with ordinary care on his part would be reasonably safe for him; and to give him notice of all the dangers incident to the service of which he is not cognizant and the employer is or ought to be. But an employe of full age and sound mind may waive the performance of these duties, and does waive it as to all the dangers which he knows, by voluntarily incurring them. Pennsylvania Co. v. Lynch, 90 Ill. 333; Clark v. C., B. & Q. R. R. Co., 92 Ill. 47. The law presumes he knows all such as are ordinarily incident to the service. U. S. Rolling Stock Co. v. Wilder, 116 Ill. 100; Stafford v. C., B. & Q. R. R. Co., 114 Ill. 244. As to others, his knowledge or means of knowledge sufficient to charge him with it, must be proved. But employes who for any reason lack ordinary capacity in the sense above stated do not so waive the performance of these implied duties of the employer. They have the right to such instruction and caution in reference to the danger as would enable them, by the exercise of ordinary care for persons of like capacity aided by such instruction and caution, to avoid them. Thus it is ordinary care that the employer is bound to use for the safety of his employe and that the employe is also bound to use for his own; which is the degree of care that ordinarily prudent and careful persons habitually exercise under like circumstances. In a case like this an important circumstance to be considered in determining what that is for both the parties respectively is the capacity of the employe. Ordinary care on the part of an employer for the safety of an adult employe may be less than ordinary care for that of one who is a child of tender years, under circumstances in other respects similar; and ordinary care of the child for his own safety may be less than that of the adult. Children of the same age, too, like men, differ among themselves. Some are very

observant, timid and cautious of danger, and others very inattentive, even to such as is patent, or self-reliant and daring in its presence; while between these are the mass whose capacity and habit determine the measure of ordinary care for such children. The law does not determine it in any case, but furnishes a definition of it and the rule by which a jury in all cases may. With reference to this question, as to some others, it recognizes a distinction, generally, between adults and infants, and makes the fact of infancy material for the reason and to the extent that it tends to prove or raises the presumption of a comparative lack of capacity.

But this presumption, like that of the capacity of an adult, may be rebutted and overcome by proof to the contrary. Thus a boy of sixteen years may have been so instructed and cautioned by experience with dangerous machinery that he may be justly held to greater care for his own safety, as being only ordinary care for him, than a man of forty without such experience. Infancy, however, in whatever stage of it, is a fact having some tendency to prove incapacity to a greater or less extent according to the age. It is for the jury to determine its weight and whether it is overcome, and to decide each case on its own merits and by its particular circumstances. C. & A. R. R. Co. v. Becker, 76 Ill. 32; Kerr v. Forgue, 54 Ill. 482. Where the employe by reason of youth lacks the requisite capacity, the employer has no right to expose him even to patent danger and with his own consent, but should cover or guard the machinery or supplement his capacity by such special instruction and caution as would enable him, by the exercise of ordinary care, in view of such instruction, to avoid it. Coombs v. New Bedford Cordage Co., 102 Mass. 572; Sullivan v. India Mfg. Co., 113 Mass. 396; Cleveland Rolling Mill Co. v. Corrigan (Sup. Ct. of Ohio), 20 N. E. Rep. 466 (at p. 471). In these cases the danger was patent and the plaintiff but little younger than the appellee here; and the reason, as stated in the last two, is that " it may frequently happen that the dangers of a particular position for or mode of doing work are great, and apparent to persons of capacity

and knowledge of the subject; and yet a party, from youth, inexperience, ignorance or general want of capacity, may fail to appreciate them." The word "appreciate" is here most fitly used. According to our standard lexicon it means "to estimate justly or truly," and estimation is "an act of judgment," and not of perception merely. "Appreciate is much used where something is in danger of being overlooked or undervalued." (Webster's dictionary.) This marks a general and notable difference between men and boys. They may alike know that a certain act, machine or implement is dangerous, and why and how it is so; but the boy lacks judgment to estimate truly the greatness or imminence of the danger and is more liable to overlook some of the ways in which it may arise. As was said in Kerr v. Forgue, *supra*, "the child is reckless and thoughtless, the man prudent and watchful." In this case nothing was shown as to the capacity of appellee except by inference from his age and experience, and the presumption that he was of ordinary intelligence for a boy of his years. He was about sixteen and a half years old at the time of the injury complained of and had dusted about the machinery that injured him almost daily for about a year and a half. Its construction and operation were as plainly visible to him as they could be to any body, and perhaps for that reason, under the ruling in Sullivan's case, *supra*, he could not complain of the fact that it was uncovered alone. He must have known that if his hand should by any means be caught between the cogs of these wheels in motion it would be crushed, and that it was liable to be so caught by means of his sleeve or anything attached to his hand that should be so caught.

It may be presumed also that the particular danger that overtook him would have been sufficiently apparent to an ordinarily thoughtful and careful man. But would not appellee, though exercising ordinary care for a boy of his age and experience, be apt to overlook or underestimate it? He had never allowed his hand, directly, or his sleeve to get between those cogs in motion. He knew that the broom was not attached to his hand. Would he suspect that if it

was caught it would pull in his hand also, or would he not rather judge that it would be bitten off, or jerked out of his hand or that he could let go his hold of it? Did he not, without his fault and solely "from youth, fail to appreciate" that danger? If so, the failure of the company to see that he was properly advised of it was negligence. It was a question of pure fact, about which different minds alike impartial might honestly differ, and therefore of just the kind to be submitted to the jury. L. S. & M. S. R. R. Co. v. Johnson, 135 Ill. 641. All the evidence upon it that was offered was before them, and none that was improper was received. The negligence may have been slight, but having themselves been boys of appellee's age and thoroughly known others, they were as competent from it to estimate truly his capacity as was the court. What we would have thought of it if we had been at liberty to pass upon its sufficiency, it is unnecessary to say. And while we think several of the instructions on both sides upon this question were open to criticism, we do not here make it, because those for defendant were given as asked, and were all that were asked, and those given for plaintiff can not be reasonably supposed to have misled the jury as to their finding. No one on either side used the phrase "ordinary care," but they alike required that to warrant a finding for him the jury should believe from the evidence that at the time of the injury he was exercising "due" or "reasonable" care for his safety.

For these reasons we think the judgment should be affirmed.

*Judgment affirmed.*