# GARTSIDE COAL COMPANY

## v.

# WILLIAM TURK.

*Master and Servant—Negligence of Master—Injury to Servant—Engine—Orders of Vice-Principal—Evidence.*

1. It must be presumed that jurymen have ordinary intelligence and comprehension.

2. It is proper in a personal injury case to show the authority an engineer had by virtue of his position as engineer and topman in a coal mine, to give directions to those working under him; also to admit evidence as to the condition of certain machinery, and the length of time it had been in the condition testified to by the witness, in view of an averment in a declaration that a defendant was bound to keep his machinery "in reasonably good and safe condition," and that it did not.

3. In an action brought to recover for a personal injury to a servant received in the course of his employment, he not having been instructed as to the dangers incident thereto, this court declines, in view of the evidence, to interfere with the judgment for the plaintiff.

[Opinion filed March 11, 1893.]

APPEAL from the Circuit Court of Jackson County; the Hon. A. K. VICKERS, Judge, presiding.

Messrs. WALKER & EDDY and SMITH, McELVAIN & HERBERT, for appellant.

Messrs. R. J. STEVENS and HILL & MARTIN, for appellee.

MR. JUSTICE SAMPLE. This action was brought by appellee to recover damages for an injury sustained while trying to start a single-cylindered engine of appellant.

The engine was used to operate the shaker that screened the coal as it was brought up from the mine. Occasionally the engine would stop on the center, when it had to be pushed off by hand. It had so stopped and was being started at the time of the injury here complained of.

It was in charge of one Biggs, who was stationed some feet above the engine and operated it by a rod extending down to the throttle valve. Below, and a short distance from the engine, the appellee, Turk, together with one Jones, was at work. Appellee had been working for appellant but a few days at the time of the accident and was not familiar with the use or operation of the machinery. When the engine stopped on the center the engineer, Biggs, ordered the appellee and Jones to start it.

In order to do so they had to climb up a ladder to where the engine was located. From the evidence in this record

it appears that the appellee arrived at the engine shortly before Jones, and pulled on the fly-wheel to get the engine off its center; when Jones came up he opened the throttle-valve to give more steam. This act of Jones appears now clearly to have been done while Turk was tugging at the fly-wheel. The engine did not start and Biggs called down to Turk to pick up an iron bar and put it under the crank and pry the engine off the center in that manner. Turk complied with the order, and as he threw his weight on the bar the second time the engine suddenly started with a jerk or jump, and before Turk could get off the bar it caught him in the crotch, lifted him up and threw him over the fly-wheel into the cogs, whereby his right arm was so crushed that it had to be amputated. It further appears from the evidence that Biggs, the engineer, was not only directing the appellee as to the proper method to be used to start the engine, but was watching the men below in the operation.

It also appears by the evidence of several engineers that it is a dangerous undertaking to attempt to pry an engine off the center, as was done in this case, while the steam was turned on. This evidence is not contradicted in this record. It is clear from the evidence that the appellee was ignorant of such danger, and although it was known by the foreman who employed him from former custom that he would be called upon to do such work, he was neither instructed in the performance of such duty nor warned of the danger attending it.

It further appears that the man in charge of the engine had, at least by long custom, the authority to control and order the men working below to assist in starting the engine when it stopped on the center, and had the authority to direct them as to the method of doing such work. It also appears in this record that before Jones touched the throttle-valve there was so much steam on that it was gushing out of the cylinder-head. In view of these facts, we hold that it was negligence for the appellant to require the appellee to perform such dangerous work without instructions or warning him of the peril he assumed. The

performance of this duty, under the circumstances as shown in this record, was a special risk, notice of which was not given by the nature of the employment.

For failing to give such notice under such circumstances, when an injury occurs in consequence thereof, a liability arises. See United States Rolling Stock Co. v. Wilder, 116 Ill. 100, and authorities there cited.

This record establishes a stronger case for the appellee than the former one (40 Ill. App. 22), and makes clear what was before somewhat obscure, and, as it shows, this case was tried on the evidence given on behalf of appellee alone. We hold, as before, that there was no negligence in the use of a single-cylindered engine, and that there was not necessarily any danger in starting it after it had stopped on the center if there was no pressure of steam. By the former record it appears that Jones put on the steam without the knowledge of Biggs and at a time when Biggs was about to shut it off entirely. In this record it appears that Biggs knew Jones turned on the steam, after which time and with that knowledge, he ordered the appellee to do an act which he, under the evidence in this record, must have known was dangerous, of which danger the appellee was ignorant.

While the engine was on the center, of course, no amount of pressure would start it; but when pushed beyond the center the greater the pressure the quicker, more sudden and violent would be the starting. The engineer must have known this, yet with this knowledge he put appellee in a dangerous position, which resulted in the injury complained of. The act of Turk was not voluntary, as claimed by appellant; what he did was in pursuance of the order of one authorized to give it.

The contention by appellant that the evidence does not make a case under the declaration is not sustained. Each count of the declaration in effect avers that the shaker was operated by steam; that the shaker had stopped, and that it was necessary to start it by hand, as it could not be started in the ordinary way by the application of steam. The gist of the action, as averred in the third and fourth counts of

the declaration, is the negligence of appellant in requiring appellee, who is averred to have been ignorant of the use and operation of such machinery, to start it in the way and manner directed.   There was no error in admitting the evidence of the witnesses, Verbal, Huggins and Glasby. The evidence of the two former related to the authority of Biggs, the engineer, while that of the latter related to the condition of the machinery in 1889.   It was clearly proper to show the authority Biggs had, by virtue of his position as engineer and topman, to give directions to those working below.  As one count of the declaration averred that it was the duty of the defendant to keep its machinery " in reasonably good and safe condition," and that it did not do so, it was not improper to admit evidence to show the condition of this machinery, and the length of time it had been in the condition testified to by the witness, in order to establish the fact of such condition as averred, and to bring notice home to appellant.   The instruction given for appellee was not erroneous.

The part of the instruction complained of is as follows :

" In determining the amount of damage, if you shall so find for the plaintiff, you may and should take into consideration all the facts and circumstances *attending the injury*, as disclosed to you by the evidence."

The point of the objection is based upon the words in italics, and it is contended that the jury were thereby permitted and directed to consider other than the physical facts attending the injury; that is, that they might consider, in estimating the damages, that the machinery was defective, and that Biggs was grossly negligent, etc.  We do not think the instructions will, fairly considered, bear such a construction; those matters relate to the question as to the guilt of the defendant, and the jury must have so taken them.   It must be presumed that jurymen have ordinary intelligence and comprehension.  It is apparent, after reading the whole instruction, that the part above referred to was intended to be general·in its nature, followed, as it is, by stating what particular facts and circumstances attending the injury

should be considered, as "the nature and extent of the plaintiff's injury, his pain and suffering, if any, resulting from such injury, the permanent nature of the disability caused thereby, if you find the disability to be permanent," etc., etc. Finding no error in the record, the judgment is affirmed.

*Judgment affirmed.*