### Illinois Steel Company v. Paschke.

1.   MASTER AND SERVANT—*Duty of Servant in Case of Negligent Workman.*—If an employe, out of the abundant opportunities he has had of observing a fellow-workman, had discovered that he was incompetent or negligent in the performance of his work, and thereby his safety was imperiled, it was his duty to have so informed the common master if he would continue in his employment without accepting its hazards.

2.   FELLOW-SERVANTS—*Negligence and Notice to Employer.*—Where an employe sustains an injury because of the negligence and incompetency of a fellow-servant, such employe can not recover of the common master for such injury unless the master had knowledge of negligence and incompetency.

**Memorandum.**—Action for personal injuries.   Declaration in case; plea of not guilty; verdict and judgment for plaintiff.   Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding.   Heard in this court at the October term, 1893.   Reversed and remanded.   Opinion filed January 11, 1894.

The statement of facts is contained in the opinion of the court.

E. Parmalee Prentice and Williams, Holt & Wheeler, attorneys for appellant.

Appellee's Brief, Case, Hogan & Case and James W. Duncan, Attorneys.

The evidence of the witnesses for the appellee, as to the general reputation of Crowley, the catcher, for slothfulness or carelessness, was clearly admissible to prove his unfitness, as tending to prove notice or knowledge on the part of the appellant as to his negligent and careless habits; and ignorance of such general reputation on the part of the master is itself negligence in a case in which proper inquiry would have obtained the necessary information, and where the duty to inquire was plainly imperative. Railway Co. v. Stupak, 123 Ind. 225; Summersell v. Fish, 117 Mass. 312; Thayer v. Railway Co., 22 Ind. 26; Love v. Railroad Co., 10 Ind. 554; Hayden v. Manufacturing Co., 29 Conn. 557; Railroad Co. v. Barber, 5 Ohio St. 541; McMillan v. Railway Co., 20 Barb. (N. Y.) 449; Faulkner v. Railway Co., 49 Barb. (N. Y.) 324; Hatt v. Nay, 144 Mass. 186; Grube v. Railway Co., 98 Mo. 330; Hilts v. Railway Co., 55 Mich. 437; Lee v. Railroad Co., 87 Mich. 574; Gilman v. Railway Co., 10 Allen 233; S. C., 13 Allen 444; Railway Co. v. Ruby, 38 Ind. 294; Baulec v. Railroad Co., 59 N. Y. 356; Monahan v. Worcester, 150 Mass. 439; 7 Am. & Eng. Enc. of Law, 852; Wood on Master and Servant, 2d Ed., Sec. 420.

Mr. Presiding Justice Shepard delivered the opinion of the Court.

The appellee was a workman for the appellant in its rolling mill, and was one of a gang of men employed in rolling and cutting heavy steel rails for railroad use. The rails were at a white heat during the time they were being subjected to the treatment in which the appellee was engaged, and were necessarily very dangerous to come in contact with.

While engaged in his work upon a rail that had reached the point where his duty required him to treat it, as he was doing, another rail which was being carried along by ma-

chinery to take the place of the one upon which appellee was engaged, struck against appellee's leg and caused the burn and injury complained of.

As stated by counsel for appellee in their brief:

"There are two counts to the declaration, the first of which alleged the common law duty incumbent on every employer, and which he can not delegate to others in such a manner as to relieve himself from the consequences of its non-performance, to furnish to his employe a reasonably safe place in which to work, and to use proper diligence to keep such place in a reasonably safe condition, and the negligence charged in the first count is merely a breach of that duty. The failure of the appellant to keep the place safe assigned to the appellee for the performance of his work, was of the very gist of the first count.

"The second count of the declaration alleged that the appellant, wholly disregarding its duty as an employer, carelessly, negligently and improperly employed a certain incompetent, inefficient and slothful man to perform the work of warning the appellee of the approach of red hot rails, which it was the duty of the appellee to straighten, as they came from a certain machine in the mill of the appellant."

In their process of manufacture, rails passed under certain treatment by a workman known as the "finishing catcher," and from him passed along in succession on narrow rollers operated by machinery running at a generally uniform rate of speed.

After the rails had left the "finishing catcher" they would come, next, to the appellee, whose duty it was, in connection with another workman, to guide them with tongs upon the straightening plate where the ends of the rails would be sawed off, which being done, and the rails sent forward to their next stage toward completion, the appellee would be ready for another rail.

It does not appear that there existed any better, safer, or more approved system or method of doing the work than that in vogue in appellant's mill.

The place where appellee was obliged to stand and walk

in order to do the work indicated, is that which appellee alleges it was the duty of the appellant to furnish and keep in a reasonably safe condition, and that the failure to do so rendered appellant liable.

In the very nature of things such a place can not be safe except the person occupying it exercises a most diligent regard for his surroundings. Operated machinery carrying along in an undeviating course red hot railroad iron, means peril to him who stands in the track the hot rail is traversing.

On the other hand, the very fact that the hot iron is traversing a fixed, known and unvarying course, renders proximity to it to one accustomed to work with it, a place of comparative security. Such, indeed, it had always been prior to the happening of the injury. The appellee had worked in the same place for a continuous period of four months, and had escaped injury, and he might have continued to work there for an indefinitely longer period without harm. There was nothing that occurred of an extraordinary character, at the time of the injury, in the passage of the hot rail from one point to another. It was pursuing the usual route, and the injury happened then, just as it would have happened if in the course of the moving along upon the rollers of any other one of the several hundred rails that were rolled each day, the appellee had stood in the way of its passage. The particular spot, itself, on which appellee stood when burned, was not an unsafe place to stand when no rail was coming along, but was an exceedingly dangerous one when a rail was approaching. It was safe enough at one time, and full of peril at another.

Accustomed as the appellee was to work there, he can not escape knowledge of the danger he was liable to. The danger was perfectly obvious, and the appellee can not escape notice of it.

The method of avoiding the danger, furthermore, was as well known to the appellee, as the fact that the danger existed.

So far as the place, alone, was concerned, there was a

failure to show that it was an unsuitable one for the appellee to work in, or that there was any failure or neglect on the part of appellant in relation to it.

But it is said, and the second count is framed on that theory, that the appellant in disregard of its duty as an employer, carelessly or negligently employed an incompetent, inefficient and slothful person, to warn appellee of the approach of the hot rails, and that in consequence thereof the appellee was injured.

The person referred to is shown by the testimony to be one Crowley, who acted as "finishing catcher," and worked next to appellee in the direction from which the hot rail approached appellee.

It appears that sometimes there would be some delay in sawing off the ends of the rails, owing to a more rapid cooling off of some rails than others, and that at such times there would be less time for appellee to get out of the way of the next approaching rail, and that often, but not always, on such occasions, Crowley would call out warningly to appellee, and it is contended that if he had so called out, on the particular occasion in question, no injury to appellee would have ensued.

The exact duty of Crowley as finishing catcher, as we gather from the evidence, was to receive the rails from the rolls, and watch them as they passed upon the rollers which were to convey them to the straightening plate, where the appellee worked. When one rail had so passed upon the rollers, his duty required him to again receive another rail from the rolls, and so on. It does not appear that it was any part of his duty to direct where appellee should stand in order to guide the rail from the rollers to the straightening plate, and thence to the saws, nor that it was a part of his duty to call out, or warn appellee that a rail was approaching him, although, in the exercise of laudable and natural human impulses, he might and should give a warning when he foresaw an unusual danger. The most that can be gathered from any of the testimony is that it was Crowley's custom to call out.

In this instance it does not appear that anything out of the usual course occurred either to retard or accelerate the speed of the rail that hit appellee, but it does appear that whatever it was that brought the approaching rail closer than usual to the one that had last preceded it, was the result of something that happened at the place where appellee was working, whereby the preceding rail had been delayed, and not at the point where Crowley was working.

In the natural and usual course of things, therefore, Crowley had not so good an opportunity of knowing the danger appellee was in as appellee himself had, and there is nothing to show that Crawley did in fact know of the dangerous proximity of the two rails.

If, therefore, it was the duty of Crowley to call out, as he was accustomed to do, if he saw appellee was in danger, that duty can hardly be said to have existed under the circumstances then prevailing.

It is not, however, so much a question as to what Crowley's duty was in relation to giving warning, as it is what effect did his omission to call to, or warn appellee on the occasion when the injury happened, have upon the appellant.

It is not alleged that it was the duty of appellant to provide a person who should give warning of the approach of a hot rail. The allegation of duty is, that of the employment of a " competent, active and skillful man to regulate the passage of said hot rails," etc., and the allegation of the breach of that duty was, the negligent employment of " a certain incompetent, inefficient and slothful man to perform the work of calling to the persons then and there managing and operating said machine," where appellee was at work. If we could assume that these allegations are sufficient, the proof of the negligence of the appellant fell upon the appellee, and in our opinion it is far short of what is required in such cases. The testimony is overwhelming that Crowley was an experienced and competent man in his capacity as finishing catcher. There is no proof whatever that the rail which caused the injury did not leave him in the usually safe

way. We have already stated the relations which Crowley and the appellee occupied to each other in the work being done. They had worked together in the same relative positions for four months. They were both old and experienced workmen in rolling mills, and well understood the duties each bore to the other.

If the appellee had discovered out of the abundant opportunities he had had of observing Crowley, that he was incompetent or negligent in the performance of his work, and that thereby appellee's safety was imperiled, it was his duty to have so informed the appellant if he would continue in his employment without accepting its hazards. Stafford v. R. R. Co., 114 Ill. 244.

There is no proof that he gave any such information to the appellant, or that appellant had knowledge in any way that Crowley was either careless, inefficient, or slothful.

Indeed, the proof concerning Crowley's reputation in those regards, so far as appellant had knowledge of it, was just the reverse.

And it might be said of the evidence which tended to show his incompetence, inefficiency, and slothfulness, in the discharge of his duties, that it partook altogether too much of the character of gossip and jealousy, and not enough of fact and substance, to be invoked for the preservation of a verdict by a jury.

That the managing officers of the corporation had abundant reason to believe Crowley to be a competent and prudent workman, and had no knowledge whatever to the contrary, and were not negligent in employing him, must be clear to any impartial reader of the testimony in the cause.

At most the negligence, if of anybody. except appellee himself, was that of Crowley, a fellow-servant of appellee, and for his negligence the employer is not liable unless he had knowledge of Crowley's incompetency. Stafford v. R. R. Co., *supra;* U. S. R. M. Co. v. Wilder, 116 Ill. 100.

We can discover no justification for the verdict, and the judgment based thereon will therefore be reversed and the cause remanded.