248    APPELLATE COURTS OF ILLINOIS.

Jarnecke v. Chicago Consolidated Traction Co., 150 Ill. App. 248.

## Elmer W. Jarnecke, Appellee, v. Chicago Consolidated Traction Company, Appellant.

### Gen. No. 14,583.

1. MASTER AND SERVANT—*effect of doctrine of assumed risk.* A servant who engages himself in any particular line of work assumes the risks of his employment in such work, so far as such risks are open and obvious to a person of ordinary intelligence and usually incident to such employment; and as to such risks or hazards the master is not required to inform the servant.

2. INSTRUCTIONS—*what amounts to oral.* An address by the trial judge referring to the institution of trial by jury and to the duty of the jury with respect to the case on trial, is an oral instruction and therefore erroneous.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at the March term, 1908. Reversed and remanded. Opinion filed October 7, 1909. Rehearing denied October 28, 1909.

**Statement by the Court.** Plaintiff recovered a judgment for $6,000 on a remittitur of $4,000 from the verdict of a jury in the Circuit Court against defendant, for damages suffered as the result of a personal injury while the relation of master and servant subsisted between the parties. The declaration comprised four counts, but the burden of the negligence charged rested in the averment that defendant permitted and allowed the electric light wire on its car to be out of repair and in an unsafe condition, while the fourth count grounds the right to recover on an alleged failure of defendant to inform plaintiff of the nature and character of the hazards and dangers of his employment.

It appears that plaintiff had been a conductor on a cable car of another company, and that on the day of the accident, August 16, 1903, being Sunday, defendant employed plaintiff as an extra man to be conductor of a car operated by electricity and colloquially designated as a "trolley car", as distinguished from a "cable

car''. Plaintiff's run was from the Devon avenue barn of defendant north to Evanston and return to what is known as defendant's ''limits barn''. Defendant's cars were lighted by electricity, the energy for so lighting being supplied to the trailers from the motor car. The cars were wired for electric light and the connection was made through a lighting wire by a coupling, consisting of a block and plug of the kind introduced in evidence before the jury and appearing as exhibits to the record in this court. Plaintiff was on the rear car of the train, and the electric lighting wire extending over that car to the rear was, in accord with the usual custom, made fast to the roof of the car over the platform. When in good order the end of the wire is so insulated as to be harmless. The proof shows that the cars were subjected to the customary test before being sent out the morning of the day of the accident, and that the car on which plaintiff was injured was one of the cars so tested. The test applied consisted in the coupling of the electric wires through the block and plug and applying the electricity. On the return trip from Evanston the motor is uncoupled from the trailer, the electric wires detached, the train made up for the return trip by changing the motor to the south of the trailer and coupling up the electric wires for lighting whenever artificial light was necessary. Plaintiff started to work at 1:15 P. M., and there is some proof that at 5:06 he got the car on which he was injured between 9:15 and 9:30 thereafter. Plaintiff left Evanston on the return trip about 7:46, and while he did not couple up the electric light because he was afraid to, such coupling being a part of his duty, yet he saw it done by another. The end of the lighting wire was fastened to the roof at the rear of plaintiff's car at the time of leaving Evanston on the return journey, and so remained until the southern limit of the journey had been reached and some distance on another trip to the North had been traveled, when, at about 9:30 o'clock. through some cause unexplained by the proofs, the wire be-

250    APPELLATE COURTS OF ILLINOIS.

Jarnecke v. Chicago Consolidated Traction Co., 150 Ill. App. 248.

came unfastened and dropped down, striking plaintiff upon the hand, which rested on the metal on the dashboard, and the end of the wire not being insulated, the contact resulted in burning his hand and in impairing its mobility.

It is assigned for error and argued as grounds for reversal, that the verdict is contrary to the weight of the evidence, that there are erroneous rulings of the court on evidence, and error in its written and oral instructions to the jury; and that the damages awarded are excessive.

JOHN A. ROSE and FRANK L. KRIETE for appellant; W. W. GURLEY, of counsel.

EMERY S. WALKER, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This judgment must be reversed because the evidence fails to sustain the charge of negligence and for the error of the trial judge in orally instructing the jury.

We start out with the implication of law that the servant who engages himself in any particular line of work assumes the risks of his employment in such work, so far as such risks are open and obvious to a person of ordinary intelligence and usually incident to such employment; and as to such risks or hazards the master is not required to inform the servant. C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492; Montgomery Coal Co. v. Barringer, 218 Ill. 327; U. S. Rolling Stock Co. v. Wilder, 116 Ill. 100.

That the apparatus used in the lighting of the cars was plainly in view and simple in operation is not disputed. That it was all open and obvious to plaintiff is clear. That it was part of his duty to make the connection for light and couple the light wire to the car, is not denied. While plaintiff did not make the coupling personally, it was made by another at his request and in his presence. The end of the wire was fastened to

Jarnecke v. Chicago Consolidated Traction Co., 150 Ill. App. 248.

the roof of the car over his head, and in clear view, so that he could observe it at all times. The rules of the defendant made it the duty of plaintiff to see to it that these electric appliances were in good order, and to report any defects. How the wire came to fall, what caused it so to do, is not developed by the proofs. In what way the end of the wire became stripped of its insulation and therefore dangerous in certain conditions to come in contact with, the proof is equally lacking in information. No inference of negligence can be indulged in the face of the proofs that the morning test demonstrated that the lighting appliance was in good working condition. If at the time the end of the wire was fastened to the roof it was stripped of the insulation, and the further plainly apparent fact that the slightest examination by plaintiff would have made evident its dangerous condition. then plaintiff is chargeable with notice of the condition which such an examination would have disclosed. Moreover, it was one of the duties of plaintiff to see that the same remained securely fastened, not only for his own protection, but for the protection of passengers passing over the platform immediately under it; for its lack of safety was as much a menace to such passengers as to plaintiff. How the end of the wire became unravelled from the insulation tape or fell from its fastening is left entirely to theory, based on surmise and conjecture. If the defects did not result from any omission of duty on the part of plaintiff, then, so far as we can gather from the record, they were brought about by the negligence of a fellow servant, which, upon well settled legal principles, in this jurisdiction, inhibits a recovery by plaintiff. It consequently follows that the evidence fails to saddle defendant with the negligence charged against it as grounds sufficient to permit of a recovery.

Immediately upon the jury being sworn to try the case, and before any proof was proffered or argument made, the learned trial judge addressed the following remarks to the jury orally:

252    APPELLATE COURTS OF ILLINOIS.

Jarnecke v. Chicago Consolidated Traction Co., 150 Ill. App. 248.

"Gentlemen of the jury: I think I might to some advantage say a few words to you before you enter upon the trial of this case. First, about the seriousness of the duty of a jury, and the seriousness with which they ought to regard their duty, especially in view of the oath which you have just taken.

"Early in the history of the Anglo-Saxon race cases used to be tried by judges appointed by the king. At a certain period in the history of that race the people demanded of the king that he surrender the prerogative of having his judges exclusively try cases, because they thought the cases were arbitrarily tried by the judges, and they insisted that the issues of fact raised between parties to a lawsuit should be submitted to twelve men drawn from the surrounding country in which the litigants lived. It was their theory that twelve men selected from the neighborhood would be more fair between the litigants than perhaps the judges selected by the king. And this principle was thought to be so valuable that it was embodied, when this country was established, that is, the government of this country was established —it was embodied in the constitution of the United States, and in the constitution of every state of the United States, that trial by jury should remain inviolate. That means that no judge can interfere between these litigants to decide the questions of fact. And you twelve men are the only body of men, since you have been sworn in this case, that can decide the issues of fact between these parties. You are the only tribunal in the world to whom these parties can appeal for justice.

"The plaintiff in this case claims that he has been injured through the fault of the defendant, and he is appealing to you for redress after having proved his case, if he does. The defendant, on the other hand, claims that, although this plaintiff may have suffered a very serious injury, for which the defendant, probably, is as regretful as anybody else, nevertheless the plaintiff must bear his own burdens; and that, if he

has suffered an accident, he must bear that accident with patience, the best way he can, and not seek to throw that burden on the defendant, unless he can prove that it was occasioned by the fault of the defendant. And briefly, without attempting to fully explain to you what the law is, I want to say that a company in the position such as this company is in does not insure that every person who works for it will not suffer any injury. But the plaintiff who comes into court undertakes to show you, gentlemen of the jury, that he was injured not as a result of a simple accident, but as the result of an accident which was the fault of the defendant and not his fault at all. He undertakes to show you that not only did the defendant omit some duty which it owed to him, but that he himself was not guilty of any negligence of any kind in taking care of his own person which contributed to the injury.

"And these matters you ought to bear in mind when you hear the testimony, and throughout the progress of the case.

"I might say to you further that the oath which you have just taken imposes on you the duty of trying this case between these parties in exactly the same manner as though the defendant in this case was an individual. It is perfectly conceivable that the plaintiff in a case who is in very poor pecuniary circumstances might suffer an injury, perhaps through an accident, which, perhaps, would render him an object of charity all the rest of his life. On the other hand, it is equally conceivable that a defendant when sued by a plaintiff might be a person of such—in such pecuniary circumstances that if a verdict was rendered against the defendant for a considerable amount of money it would render the defendant penniless and make him an object of charity all the rest of his life. Those considerations ought not to affect the verdict in the case. In other words, you ought not to find a verdict in this case based upon the pecuniary situation of either one of these parties. The defendant, on the other hand, has

254    APPELLATE COURTS OF ILLINOIS.

Jarnecke v. Chicago Consolidated Traction Co., 150 Ill. App. 248.

just as much right to a verdict at your hands if you think he should have a verdict, as if the defendant were an individual person who is going to be rendered altogether insolvent by the verdict you may render. The plaintiff, on the other hand, has the same right on his part; that you cannot take into consideration any pecuniary results which a verdict is going to have by reason of any sympathy for him or against him, for this defendant or against this defendant. And as you are, as I said, the only tribunal now standing between these parties, it is a solemn position you are in, and you cannot allow your oath to be violated by any deviation from your duty by sympathy, but simply to determine this case from the evidence and the law as you get it later on".

To this address of the court to the jury counsel for defendant preserved an exception, on the ground that such remarks were in the nature of an oral instruction to the jury and contrary to law. The trial judge attempted to palliate this error and to furnish a corrective by sending to the jurors, after they had retired from the bar of the court to consider of their verdict, a transcript of the stenographic notes of this address; but we are of the opinion that such attempt was futile and did not cure the grievous error which such address injected into the record of the trial. Notwithstanding we might be willing to concede that such address was guileless of misinformation historically and in its statement of law, yet it was clearly violative of the statute which forbids the court instructing the jury otherwise than in writing, and then with the added restriction that such instructions be confined to the law pertinent to the facts in proof. Sections 72 and 73, R. S., contain the law on this subject, which is as follows:

"Sec. 72. The court in charging the jury shall only instruct them as to the law of the case."

"Sec. 73. Hereafter no judge shall instruct the jury in any case, civil or criminal, unless such instructions are reduced to writing".

Our Supreme Court gave a literal construction of these provisions of our statute when it said, in Hefling v. Van Zandt, 162 Ill. 162: ''Under our statute the Circuit Court has no authority to instruct the jury orally on any material issue in the case.'' A violation of the statute in this regard was adjudged reversible error.

Plaintiff insists that a sufficient exception to the court's action in its oral address to the jury was not preserved which entitles defendant to advantage of such error on review. To this contention we cannot yield our assent. The exception preserved immediately after the address was made and before any further proceedings were had, fulfils all legal requirement entitling defendant to urge before this court such error as proper ground for reversal of this judgment of the trial court.

For the errors above indicated the judgment of the Circuit Court is reversed and a new trial awarded conformable to the views herein expressed.

*Reversed and remanded.*

BAKER, J. I concur in the judgment, but not in all the reasoning of the opinion.