# The Consolidated Coal Company

*v.*

## George Wombacher.

*Filed at Mt. Vernon April 27, 1890.*

1. Negligence—*master and servant—respondeat superior.* A declaration in a suit by a servant against a coal company, showed that the defendant was the owner and operator of a coal mine, and had in its employ a pit boss, to whom it had given authority to direct and control the labors of those employed in its mine; that plaintiff was employed by defendant to labor in the mine, under the direction and control of the pit boss, and was so laboring; that the pit boss, knowing that there was loose overhanging rock in the roof of the mine, insufficiently braced to prevent its falling and doing great personal injury, falsely represented to plaintiff that there was no danger to be apprehended from the overhanging rock, and directed him to work under such loose rock in the roofing of the mine, and that plaintiff did then, pursuant to such directions, work thereunder, and while doing so, and without fault on his part, said overhanging rock fell from the roofing of the mine upon him, and severely wounded and injured him: *Held,* that the facts so alleged make a *prima facie* case of negligence.

2. Where the negligent act of one servant causing injury to another is the direct result of the authority conferred upon the former by the master over the servant injured, the master will be liable for such injury. In such case, the servant whose negligent act causes the injury, stands in the place of the master, and the servant injured has no discretion or independent judgment of his own, but owes the same duty of obedience that he would if the master were himself acting.

3. Same—*danger of service—notice to agent in charge—presumption.* An agent or boss of a mining company, having charge of the mining operations and of the servants employed in the work, and power to direct and control them, will be presumed to have notice of the danger of a particular service he requires of a workman, and his neglect to inform the workman of such danger will be the negligence of the mining company.

4. Same—*servant assuming risks of service—when entitled to notice.* A servant, in entering upon an employment, assumes only such risks as he has notice of, either express or implied; and it is culpable negligence on the part of the master to fail to notify him of risks which are not patent, and of which he is not cognizant from the nature of his employment.

5. SAME—*master and servant—master estopped to deny an agent's or servant's authority.* Where a master permits his agent in charge of a mine to direct and control the workmen therein employed, as to the place they shall work, he will be estopped, when sued by a servant for an injury resulting from the negligent act of his agent, to deny the authority of the agent to direct the servant injured to work in a dangerous place.

6. SAME—*contributory negligence—matter of defense—requisites of the declaration.* In an action by a servant against a mining company, to recover for a personal injury received from falling rock while working in a place where he was directed, on the assurance of the company that there was no danger, whether the plaintiff was guilty of contributory negligence by knowing the danger and failing to observe due care to avoid it, if susceptible of proof, is a matter of defense which need not be anticipated or negatived in the declaration.

7. PRACTICE—*time to object—for a variance.* An objection that there is a variance between the declaration and the proofs, when made for the first time on appeal or error, comes too late.

APPEAL from the Appellate Court for the Fourth District;— heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. W. H. SNYDER, Judge, presiding.

This was an action on the case, by appellee, against appellant. The declaration sets out that defendant, on the second day of February, 1888, at the village of Trenton, in St. Clair county, owned and operated a coal mine, from which it was mining coal; that it had engaged there certain employes to run mining machines, and other employes to drill and blast coal after it had been mined by the machines, and other employes to load the coal into boxes to be transported to the bottom of the shaft, to be hoisted to the surface, and other employes to drive mules attached to the said boxes, and other employes to build roads, drive and open entries, and set up props to prevent clod, dirt, coal, rock or other overhanging material from falling; that defendant had also an employe called a "pit boss," who was the master and director of the other employes, having power to employ and discharge and to control and direct all the said other employes; that it was the

duty of those running the mining machines to mine coal, and the duty of the said blasters to drill and blast down the coal so mined, and of the loaders to load the said coal so mined and blasted upon boxes, and of the drivers to haul said coal to the pit bottom, and of the others to lay roads, and set props to prevent the falling of clod, dirt, rock and other material overhanging; that defendant had no props for the purpose of propping up said coal, clod, dirt and rock; that plaintiff was employed by defendant as a loader, and it was his duty to load coal on boxes in the mine; that while he was so engaged there was overhanging him a large quantity of rock which was not propped up; that while he was so engaged, the said pit boss examined the said rock, and directed the plaintiff to continue his labor thereunder, and represented to plaintiff that the said labor under said rock was without danger, and that said rock would remain overhanging until plaintiff could complete the work directed by the pit boss to be done; that plaintiff thereupon continued said work, and while so engaged, and without any fault or negligence on his part, the rock fell and crushed him, and fractured his spine, and caused paralysis of his lower extremities, and otherwise permanently and incurably injured him, on account of which he has been compelled to lay out $500 for medical attendance, and has been deprived of the means of earning a living for himself and family; that the pit boss, at the time, knew it was dangerous to work under said rock which he had examined, and knew the rock was liable to fall on plaintiff, and, notwithstanding said knowledge, directed plaintiff to continue his labor there, and informed plaintiff that the said labor was then and there safe; that the said pit boss, well knowing the dangerous nature of said rock, and having full control of the employes whose duty it was to place props under said rock, neglected to order said props to be set, and, well knowing that said rock would fall and injure or kill plaintiff, falsely represented to plaintiff that said rock was solid, and, well knowing that said labor under said rock was

dangerous, permitted and directed plaintiff to continue said labor, whereby, and by means of said neglect and knowledge and direction, and of said failure and neglect, of said pit boss, the plaintiff, without any fault on his part, was, by the fall of said rock, injured, to his damage of $5000.

Appellant pleaded the general issue. The jury returned a verdict in favor of appellee, assessing his damages at $2500. Motion for a new trial was made by appellant and overruled by the court, and the court thereupon entered judgment upon the verdict of the jury. Appellant then moved in arrest of judgment, but this also was overruled, and appellant then took the case, by appeal, to the Appellate Court for the Fourth District, and that court affirmed the judgment of the circuit court. The case is here by the appeal of the appellant from the last named judgment.

Mr. Charles W. Thomas, for the appellant:

There was a total and fatal variance between the allegations of the declaration and the case made by the evidence. See Stephens' Pl. 107, 108; 1 Greenleaf on Evidence, sec. 79; *Bloomington* v. *Goodrich*, 88 Ill. 558; *Gavin* v. *Chicago*, 97 id. 66; *Moss* v. *Johnson*, 22 id. 633; *Railroad Co.* v. *McKee*, 43 id. 119.

The motion to instruct the jury to find for the defendant, presents the question of the sufficiency of the evidence to sustain the action. *Blanchard* v. *Railway Co.* 126 Ill. 416.

As to the liability of the master for the negligent acts of his agent or foreman having authority to direct and control other servants, see *Railroad Co.* v. *Ross*, 122 U. S. 377; *Railroad Co.* v. *May*, 108 Ill. 288; *Railway Co.* v. *Hawk*, 121 id. 259.

The judgment should have been arrested, for the reason the declaration shows no cause of action.

Messrs. TURNER & HOLDER, and Mr. FRANK PERVISE, for the appellee:

The danger of the service required was known to Ritzheimer. If not actually known to him, by the exercise of ordinary care it could have been discovered by him, and he and his employer will be presumed to have known of the danger. Deering's Law of Negligence, sec. 200; *Whalen* v. *Railroad and Coal Co.* 16 Ill. App. 324; *Railroad Co.* v. *Russell*, 91 Ill. 298; *Railroad Co.* v. *May*, 108 id. 228; *Railroad Co.* v. *Avery*, 109 id. 314.

A master who places an inexperienced person at work in a dangerous position is bound to give him due caution and instruction. Deering's Law of Negligence, sec. 197; *Dowling* v. *Allen*, 74 Mo. 13; *Railway Co.* v. *Goebel*, 119 Ill. 515.

The master is also bound to provide a safe place for the servant to perform his labor. Deering's Law of Negligence, sec. 199; *Ryan* v. *Fowler*, 24 N. Y. 410; *Whalen* v. *Railroad and Coal Co.* 16 Ill. App. 324; *Railway Co.* v. *Conroy*, 68 Ill. 560; *Railroad Co.* v. *Russell*, 91 id. 298; *Wuotilla* v. *Lumber Co.* 37 Minn. 153.

It is now the well settled law of this State, that one servant known as "conductor," "section boss," "pit boss," "foreman," or other appropriate term, who directs other servants under his charge where to work and what work to do, is not a fellow-servant within the rule that one servant can not recover for an accident caused by the negligence of a fellow-servant, but is regarded as a "vice-principal" or "superior," for whose negligence the common master will be liable. *Railroad Co.* v. *May*, 108 Ill. 288; *Rolling Mill Co.* v. *Johnson*, 114 id. 57; *Railway Co.* v. *Hawk*, 121 id. 259; *Railroad Co.* v. *Blank*, 24 Ill. App. 439.

Such is the law in nearly every State, if not in every State, in the Union. *Railroad Co.* v. *Keary*, 3 Ohio St. 201; *Cowles* v. *Railroad Co.* 84 N. C. 309; *Moon* v. *Railroad Co.* 78 Va. 745; *Danigan* v. *Railroad Co.* 52 Conn. 285; *Railway Co.* v. *Swanson*, 16 Neb. 254; *Anderson* v. *Bennet*, 16 Ore. 515.

Such is the law declared by the United States courts, both District and Supreme. *Railroad Co.* v. *Ross,* 112 U. S. 377; *Railroad Co.* v. *Herbert,* 116 id. 647; *Thompson* v. *Railroad Co.* 14 Fed. Rep. 564.

The same doctrine is applied to a temporary foreman or pit boss, appointed by and acting under instructions from the regularly employed foreman or pit boss. The source of his authority is immaterial, if it be traced back to the common master, through different persons. *Railroad Co.* v. *May,* 108 Ill. 288; *Rolling Mill Co.* v. *Johnson,* 114 id. 57; *Railroad Co.* v. *De Armond,* 86 Tenn. 73.

The only test is, has the person in command authority to direct men where, when and how to work, and what work to do; and such men have no opportunity to avoid the negligent acts of another without disobedience to their immediate superior. *Rolling Mill Co.* v. *Johnson,* 114 Ill. 57.

The common laborer must be held subject to the orders of such foreman, and, being so held, should be entitled to be recompensed for injury caused by the negligence of such foreman, he being without fault. *Rolling Mill Co.* v. *Johnson,* 114 Ill. 57; *Railway Co.* v. *Hawk,* 121 id. 259.

It is too late for appellant to avail itself of an objection upon the grounds of a variance. If a variance actually existed, the objection should have been made on the trial, so that it might have been obviated by an amendment, if deemed material. *Bloomington* v. *Tebballs,* 17 Ill. App. 456; *Elgin* v. *Kimball,* 90 Ill. 356; *Railway Co.* v. *Estes,* 96 id. 473; *Horne* v. *Walton,* 117 id. 130.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Since, in this class of cases, our jurisdiction is limited to the determination of questions of law, our consideration of appellant's argument must be confined to the questions:—First, is the declaration sufficient to sustain the judgment? second, can we consider whether there is a variance between

the allegations and the evidence? and third, ought the court to have instructed the jury to find for the defendant? The other parts of that argument relate wholly to the effect and weight of the evidence, and ought therefore to have been presented to the Appellate Court in a petition for rehearing, where, alone, they would have such relevancy as would entitle them to consideration. The questions before us will be briefly considered in the order stated.

*First*—It is, among other things, sufficiently stated in the declaration that appellant is owner and operator of a coal mine, and has in its employ a pit boss, to whom it has given authority to direct and control the labors of those employed in its mine; that appellee was employed by appellant to labor in its mine, under the direction and control of this pit boss, and was so laboring; that this pit boss, knowing that there was loose overhanging rock in the roofing of the mine, insufficiently braced to prevent its falling and doing great personal injury, falsely represented to appellee that there was no danger to be apprehended from overhanging rock, and directed him to work under such loose overhanging rock in the roofing of the mine, and that appellee did then, pursuant to such direction, work thereunder, and while doing so, and without fault or negligence on his part, said overhanging rock fell from the roofing of the mine upon appellee, and severely wounded and injured him.

These facts, *prima facie*, make a case of negligence. That appellee was guilty of contributory negligence by knowing of the danger and failing to observe due care to avoid it, or otherwise, if susceptible of proof, was matter of defense which need not have been anticipated and negatived in the declaration. (*Cox* v. *Brackett*, 41 Ill. 222; *Illinois Central Railroad Co.* v. *Simmons*, 38 id. 242.) Where the negligent act of one servant causing injury to another is the direct result of the exercise of the authority conferred upon him by the master over the servant injured, the master is liable. In such case, the servant

whose negligent act causes the injury stands in the place of the master, and the servant who is injured has no discretion or independent judgment, but owes the same duty of obedience that he would if the master were himself acting. *Chicago and Alton Railroad Co.* v. *May, Admx.* 108 Ill. 288; *Wabash, St. Louis and Pacific Ry. Co.* v. *Hawk,* 121 id. 259; *Rolling Mill Co.* v. *Johnson,* 114 id. 57; *Northern Pacific Ry. Co.* v. *Herbert,* 116 U. S. 647; *Chicago, Milwaukee and St. Paul Ry. Co.* v. *Ross,* 112 id. 377; *Thompson, Admr.* v. *Chicago, Milwaukee and St. Paul Ry. Co.* 14 Fed. Rep. 564.

*Second*—No evidence was objected to as irrelevant and not tending to sustain the declaration, and admitted by the court over that objection, and no motion was made upon the trial to exclude all or any evidence from the consideration of the jury for the reason that it was irrelevant and did not tend to or actually sustain the declaration. The question of variance was presented for the consideration of the court for the first time in the Appellate Court. This was too late, and we therefore can not now entertain that question. *City of Elgin* v. *Kimball,* 90 Ill. 356; *Indianapolis and St. Louis Ry. Co.* v. *Estes,* 96 id. 473; *Ladd* v. *Pigott,* 114 id. 647; *Wabash, St. Louis and Pacific Ry. Co.* v. *Coble,* 113 id. 115; *City of Mattoon* v. *Fallin,* id. 249; *Horne* v. *Walton,* 117 id. 130; *Schoonmaker* v. *Doolittle,* 118 id. 605; *Dulin* v. *Prince,* 124 id. 76.

*Third*—We think there was evidence tending to sustain the material allegations of the declaration, however insufficient we might regard it if we were required to determine where is the preponderance. Ritzheimer, the night pit boss, is shown to have had sole charge of appellee and other laborers at the time appellee was injured. As to his authority he said: "I could tell a man to go and do this, or quit." That, clearly, is all that his master could have done.

There is evidence that the roofing of the room in the mine in which appellee was working when injured was in an unsafe condition, and that a laborer had previously refused Ritzheimer

to work in it at day wages because of its condition. Appellee, among other things, testified that he was a farmer, but latterly had been a laborer; had worked in this mine from November, 1887, until February 7, 1888,—the day he was injured; and his examination then proceeded thus:

Q. "State where you regularly worked in that mine.

A. "For something over a month I had been working in the entry. I was throwing coal into the boxes. I was loading the coal. The coal was blasted by some other persons. I had nothing to do with shooting the coal down. I am not a practical miner. That was done by extra men.

Q. "State whether or not you had anything to do with propping up the roof of the mine.

A. "No; I had nothing to do with that. The mining machine had not got around to the entries yet, and I had no work to do, and was sitting down in the entry, waiting, when Peter Ritzheimer, the night pit boss, came along, and said to me, 'You have nothing to do?' I said 'No,' and he then said, 'Come along with me into that room—there is a load of coal there.' I then went into that room and worked there about three hours before I was hurt. The top fell down on me. I laid there, covered with rock and slate, until I was taken out by others. * * * I am paralyzed in the lower extremities. My bladder is also paralyzed. I have been in that condition since the accident. I am a married man, and have a family of five children,—the oldest is thirteen years of age. I am without means, and had to depend upon my wages for support. I never worked in the room where I was hurt, before this night in which I was injured. I knew nothing of its condition as to safety."

He also said that no one told him that it was dangerous. Under this evidence, Ritzheimer is to be assumed to have known of the danger from the roof, and his negligence in failing to communicate it to appellee is the negligence of appellant. By permitting Ritzheimer to act as he did, appellant is es-

5—134 ILL.

topped to deny his authority in that respect. (*Lake Shore and Michigan Southern Railroad Co.* v. *Brown, Admx.* 123 Ill. 162.) And a servant in entering upon an employment, as appellee here did, assumes only such risks as he has notice of, either express or implied; and it is culpable negligence in the master to fail to notify the servant of risks which are not patent, and of which he is not cognizant from the nature of his employment. *United States Rolling Stock Co.* v. *Wilder*, 116 Ill. 100; *Citizens' Gas Light Co.* v. *O'Brien*, 118 id. 174.

The judgment is affirmed.

*Judgment affirmed.*