## Edmond Morier v. Charles Moran.

1. CONTRACTS—*By Implication.*—That which is implied in a contract is as much a part of the contract as that which is expressed.

2. SAME—*Construction.*—A court will always lean to a construction which makes a contract valid rather than one by which it becomes invalid.

3. SAME—*To Take the Output of a Mine.*—A contract between a dealer in coal and the owner of a mine to take " the entire output of a mine (from one to three cars per day) of lump coal," implies an obligation on the part of the owner of the mine to put out not less than one and not more than three carloads per day, and is one of mutual obligation, the quantity of the output within the limits being at the option of the owner of the mine. A failure on the part of the dealer to

take the coal according to the contract, renders him liable to respond in damages.

4. SAME—*Breach of—When a Cause of Action Accrues.*—Where a mutual contract was entered into, to take the entire output of a coal mine for a specified season, the quantity being fixed between specified limits, and afterward the purchaser refuses to take the coal according to the contract, such refusal renders it unnecessary for the owner of the mine to take the coal out of the ground, and gives him an immediate right of action. He need not wait until the time mentioned in the contract has expired. He is not bound to take out the coal, trusting to find a market and charge the difference between the contract price and what he might get for it.

5. VARIANCE—*Must be First Raised in the Court Below.*—Where the question of a variance between the allegations and the proofs is not raised in the court below, it can not be raised in the Appellate Court.

6. EXCEPTIONS—*When Deemed to be Abandoned.*—Where exceptions are taken on the trial of a case in the court below, but are not mentioned in the appellant's brief in the Appellate Court, they will not be considered.

7. INSTRUCTIONS—*Disregarded by Jury.*—The fact that a jury disregarded an incorrect instruction, is no ground for reversing a judgment.

**Assumpsit.**—Breach of contract. Error to the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Submitted at the March term, 1895. Affirmed. Opinion filed April 4, 1895.

### BRIEF FOR PLAINTIFF IN ERROR.

When a vendee of goods, sold at a specific price, refuses to take and pay for the goods, the vendor may store the goods for the vendee, give him notice that he has done so, and then recover the full contract price; or he may keep the goods and recover the excess of the contract price over and above the market price of the goods at the time and place of delivery, and this means the market price of such goods, in such condition and in such quantity as the goods were at the time for delivery. In such case, if the goods are bought in large quantities, the market price at retail is not the standard, but the market price in large quantities; or the vendor may, giving notice to the vendee, proceed to sell the goods, in their then condition and quantity, to the best advantage, and recover of the vendee the loss, if the goods fail to bring the contract price. Bagley v. Findlay, 82 Ill. 525; Ames v. Moir, 130 Ill. 582, at pp. 591, 592; Trunkey v. Hedstrom, 131 Ill. 204, at p. 209.

Morier v. Moran.

BRIEF FOR DEFENDANT IN ERROR, JAMES C. McSHANE, ATTORNEY.

A party seeking to enforce a contract is not bound to prove performance where the other party has failed to do what constituted a necessary condition precedent of performance on his part. Aller v. Pennell, 51 Iowa 537; Lawyer's Reports Annotated, Book 3, page 589, note; Gordon v. Norris, 49 N. H. 376; Haines v. Tucker, 50 N. H. 307; Collins v. Dalaperte, 115 Mass. 159; Ulmann v. Kent, 60 Ill. 271; Sanborn v. Benedict, 78 Ill. 310; Haskell v. Hunter, 23 Mich. 305; Camp v. Hamlin, 55 Ga. 259; McCracken v. Webb, 36 Iowa 551; Dustan v. McAndrews, 44 N. Y. 72; Hayden v. Demets, 53 N. Y. 426.

MR. JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

Edmond Morier and Arthur W. Underhill were sued by Charles Moran for not taking coal under a contract with him. Underhill was not served with process. On the trial but two exceptions were taken, and those related only to matters not alluded to in the brief for the plaintiff in error, and therefore not to be considered. City of Mt. Carmel v. Howell, 137 Ill. 91.

No objection to the declaration was made below, nor does any assignment of error here question its sufficiency. No variance between the declaration and evidence was pointed out below, and therefore no question of variance can be raised here. Consolidated Coal Co. v. Wombacker, 134 Ill. 57.

The case is here upon its intrinsic merits. If upon any pleadings, with no incorrect instructions, a jury might find a verdict for Moran for $2,500, that being the amount of the judgment, then this judgment should be affirmed.

That the jury disregarded an incorrect instruction in favor of Morier, is no ground for reversing. McNulty v. Ensch, 134 Ill. 46. The evidence as to any contract is as follows:

CHICAGO, Oct. 19, '89.

CHARLES MORAN, Esq., 309 Jackson St., Danville, Ill.

Our Mr. Morier, when in your town a few days ago, or-

dered a car of coal. We would like to try your coal, and if you will give us the output of your mine we will give you $1.20 per ton during the winter and $1.15 for the summer, if the coal is satisfactory.

Would it pay you better to load mine run? We have an order for about 100 cars, to be shipped in lots of ten cars, or would take car per day, or more, if it would be convenient to ship this way.

We can not afford to pay more than 90 c. per ton for this, but we should think it would pay you better at this price than to screen your coal. In this manner you could sell all the coal you mined. In other words, you would be paid for all the nut and screenings. Let us hear from you at an early date, because if we make arrangements for your coal we are ready to take it at any day; sooner the better. Let us know if you have shipped the sample car, and furnish us car number. Yours truly,

MORIER, UNDERHILL & Co.

CHICAGO, Oct. 28, '89.

CHARLES MORAN, Esq., Danville, Ill.

DEAR SIR: We are in receipt of your letter of the 28th, offering us the putout of your mine of lump coal, and we herewith enclose a contract which, if satisfactory, please sign and return to us.

It must be understood that in view of our giving you this price, we must have good, clean coal, as we can buy all we want for less money, but our object in making this arrangement with you is to get some cleaner coal, so you will exercise great care in loading.

You can commence to ship at once and notify us promptly of daily shipments. We wish you would give us a car of screenings occasionally, as we will require more than we are getting at present.

When writing, state what time the train leaves the mine, as we will telegraph you some time, and would like to know how late in the day we can do so.

Yours truly,

MORIER, UNDERHILL & Co.

Morier v. Moran.

Chicago, Oct. 28, '89.

Charles Moran, Danville, Ill.

Dear Sir: We hereby agree to take the entire out-put of your mine (from one to three cars per day) of lump coal, clean forked, and free from stone, at the following figures, viz.: From November 1, 1889, to March 1, 1890, at $1.25 per ton of 2,000 lbs. From March 1, 1890, to September 1, 1890, at $1.15 per ton of 2,000 lbs. Shipments to be made daily; settlement at the end of each month for coal bought the preceding month.

Yours truly,

Morier, Underhill & Co.

Charles Moran.

Now, as Morier, Underhill & Co. could not take the "output" unless Moran would put out, his signature was an agreement on his part that he would put out, not less than one car per day, with the privilege to put out three cars per day. What is implied in a contract is as much a part of the contract as what is expressed. Bishop on Contracts, Sec. 241.

And the words of the last writing, without referring to the previous letters, imply an obligation on the part of Moran to put out not less than one and not more than three carloads per day. Broom, Leg. Max., 667; Memory v. Niepert, 131 Ill. 623; Allamon v. Mayor of Albany, 43 Barb. 33; Genet v. Del. & Hud. Canal Co., 136 N. Y. 593; Hudson Canal Co. v. Penna. Coal Co., 8 Wallace 276, I refer to, without copying at length, as authority explicit and abundant.

The contract, therefore, is one of mutual obligation, the quantity, within the limits, being at the option of Moran.

During November Moran shipped twenty-eight cars. Very soon thereafter, by letters in the record which the abstract fails to notice, Morier, Underhill & Co. commenced to order that less and less coal be shipped to them. Moran kept loaded cars on a side track awaiting their orders.

June 20th, the firm wrote to Moran to ship but one car per week, to which Moran replied that he considered that "the same as a quit, as I can not run a mine on one flat per week." He sent two cars in July and that was the end of

the trade. No orders were ever sent that were not filled, and, so far as appears, without delay.

The verdict settles that there was no just ground of complaint of the quality of the coal. The real trouble, as the letters of the firm show, was that they could not dispose of the coal. That was their risk. Their refusal to take the coal according to the contract rendered it unnecessary for Moran to take the coal out of the ground. The act would have been useless. See cases cited in Pulling v. Travelers Ins. Co., 5,285 last term.

The coal was in the ground, and Moran had facilities for taking out forty to fifty tons per day, and thus his ability to fill the contract is proved. Coal had gone down in the market, and from the profit to him in filling the contract, his readiness and willingness may be inferred. Coonley v. Anderson, 1 Hill (N. Y.) 519.

Indeed, the refusal of the firm to take the coal as the contract required, gave Moran an immediate right of action. He did not need to wait until the time mentioned in the contract had expired. Follansbee v. Adams, 86 Ill. 13, and cases there cited.

If the testimony of Moran that the mine would be of no less value with the coal to fill the contract taken out, than with the coal in, is to be accepted, then Moran has not recovered full damages. He was not bound to take out the coal, trusting to finding a market, and charge the difference between the contract price and what he might get. But the question of the *quantum* of the damages is not before us. Excessive damages was not assigned as a ground in the motion for a new trial. Heffron v. Brown, 54 Ill. App. 377.

We purposely refrain from considering whether the doctrine of Schneider v. Turner, 27 Ill. App. 220, 130 Ill. 28, has any application to this case. Counsel have not alluded to it. Campion v. Smith, 46 Ill. App. 501.

The judgment is affirmed.

MR. PRESIDING JUSTICE WATERMAN.

I do not regard the contract as giving any option. The contract was for the entire output of a certain mine; the

statement "From one to three cars per day" did not give to the proprietor of the mine an option to supply one, two or three cars per day. The statement was inserted for the purpose of showing what was in the minds of the parties when the contract was made—what it was expected would be done under it.

It appears that appellee had been for some years, and then was, operating a coal mine. Appellant visited the mine for the purpose of buying coal; saw appellee loading coal. It was for the entire product of a mine then being operated and of which each party had knowledge, that the agreement was entered into. Under such a contract, so made, appellee became bound to use reasonable effort to keep the product of his mine at what it was; and neither considerably below one or above three cars per day. Appellee had not the right if coal went up to reduce his output to one car per day, as appellant had not the right if coal went down to decline to take more than one car per day.

This construction is, I believe, not only in harmony with the language used, considered from the standpoint occupied by the parties when the contract was made, but with the law of this State.

A court will always lean to a construction which makes a contract valid rather than to one by which it becomes invalid.