## William W. Brauer Steamship Company v. Plano Manufacturing Company.

### Gen. No, 13,208.

1. CONTRACT—*when not void for want of mutuality.* A contract by which a shipper undertakes to ship and the carrier undertakes to carry the entire season's shipments of a firm is not void for want of mutuality where there is an approximate specification of the amount, and such a contract is a contract for the shipment of the amount so specified.

2. CONTRACT—*what competent to aid ambiguous.* Where a contract is ambiguous, it is permissible to receive evidence of the construction placed upon such contract by the parties thereto.

BAKER, J., dissenting in part.

Assumpsit. Appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Affirmed. Opinion filed June 25, 1907. Rehearing denied July 9, 1907.

**Statement by the Court.** This is a suit for alleged breach of a contract expressed in letters which are as follows:

"Brauer Line.
Philadelphia.            Hamburg.

Chicago, Ill., Nov. 23rd, 1901.
J. R. K. No. 107.

The Plano Mfg. Co.,
1110 Chamber of Commerce Bldg.,
Chicago, Ill.

Dear Sirs:

We beg to confirm engagement with you this day for your entire season's shipments of Agricultural Implements for 1902 at the ocean rate of five and one-half (5½) cents per cubic foot from Philadelphia to Hamburg, with the privilege of using our New York service at the same rate. Season's shipments between 3000 & 4000 tons.

It is understood that you give the B. & O. R. R. the preference on all shipments at equal rates. No pieces to be over one (1) ton in weight.

We will keep you posted of our sailing dates, and you are to advise us, from time to time, of space required for each steamer.

Thanking you for this contract, and asking you to kindly confirm same by return mail, we remain
            Yours very truly,
                William W. Brauer Steamship Co.,
                James R. Kehlor,
                        General Western Agent."

"Plano Manufacturing Company.

Nov. 26, 1901.

Mr. Jas. R. Kehlor,
    G. W. A. Brauer Line,
        135 Adams St., Chicago.

Dear Sir:

We beg to acknowledge receipt of the contract which is numbered 106 but which you ask to have changed to 107, for season's requirements to Hamburg. The contract seems to be in accordance with our under-

standing, except that our shipments will probably commence in December of this year, in which event we understand the contract as made will apply.

Yours truly,
THE PLANO MFG. CO.
By A. G. HUCKIN,
Traffic Manager."

"Nov. 27, 1901.

MR. A. G. HUCKIN,
T. M. PLANO MFG. CO.,
Chicago, Ill.

DEAR SIR:

I have your esteemed favor of the 26th confirming contract recently made with you for season's requirements to Hamburg. Also that you have changed this contract number to read No. 107 instead of No. 106.

Your remarks about your shipments beginning in December are in order and will be protected on the above contract; in fact, we should be very much pleased to receive some of your shipments in December, and beg to say that our December sailings will be about as follows: Dec. 10th, 19th and 29th. If you can use space on any of these steamers, kindly advise me, also as to the quantity, and I will be pleased to make reservation for you.

Yours very truly,
G. W. A."

Among subsequent letters referring to the alleged contract are the following:

"April 5, 1902.

MR. A. G. HUCKIN, T. M.,
THE PLANO MFG., City.

DEAR SIR:

Referring to contract we have with you for your entire shipments of agricultural implements for 1902 season's shipments of between 3000 and 4000 tons, we would be glad to know from you when we may expect these shipments to move.

Yours very truly,
G. W. A."

Brauer Steamship Co. v. Plano Mfg. Co.

"THE PLANO MANUFACTURING COMPANY.
April 16, 1902.

MR. JAMES R. KEHLOR,
    G. W. A. BRAUER LINE,
        135 Adams St., Chicago.

DEAR SIR:—Replying to yours of the 5th inst., beg to advise that we are not yet in a position to give you the information on the question of when we will move the balance of our Hamburg shipments. The delay in forwarding, as explained to you some time ago, is due to the fact that we wish, as far as possible, to clean out our Hamburg stock before sending forward any new goods. In this way we save storage and insurance in Hamburg.

Yours truly,
THE PLANO MFG. CO.,
By A. G. HUCKIN,
Traffic Manager."

"June 23, 1902.

THE PLANO MFG. CO.,
    Chicago, Ill.

DEAR SIRS:

We beg to call your attention to the fact that so far you have only shipped out 136½ tons on our contract with you for 1902; shipments on said contract to be between 3000 and 4000 tons during the year. This leaves an average of 476 tons to be shipped per month for the balance of this year, and we wish you would kindly advise us if this is the way shipments will be made.

We informed you continuously that we are reserving room on our steamers for property which you contracted to ship over our line, and we also beg to inform you that we shall continue to reserve space on each and every one of our steamers for the property which you contracted to ship over our line during 1902.

Kindly favor us with a reply on the subject, and oblige

Yours very truly."

Whereupon "Plaintiff's Exhibit 7" was read in evidence and is as follows:

"THE PLANO MANUFACTURING COMPANY.
JUNE 25, 1902.

MR. JAMES R. KEHLOR,
    G. W. A. BRAUER LINE,
        Chicago, Ill.

DEAR SIR:

In the absence of our president we are unable to fully answer your letter of June 23rd regarding Hamburg contract. We wish to assure you, however, that we made our contract with you in good faith, and as we supposed put ourselves on the safe side by contracting for an amount equal to 75% of what we shipped in 1901.

As you have been informed by us, at the close of last season a considerable quantity of goods remained in store at Hamburg, and requirements of this year proved so disappointing that the Hamburg stock held over from last year was almost equal to the requirements for 1902.

Allow us to take exception to your remarks that you have been reserving room for our goods on your steamers. It is usual in our line to call for reservations and unless we do we cannot see how you could understandingly reserve space for our requirements. You say for instance that you reserved 475 tons per month for the balance of the year, while of course you know that if we were to ship we would probably need a much greater quantity for say, June shipments.

We shall be pleased to discuss this matter with you further on return of our president some time during the coming week.

Yours truly
THE PLANO MFG. CO.,
By A. G. HUCKIN,
Traffic Manager."

Brauer Steamship Co. v. Plano Mfg. Co.

"THE PLANO MANUFACTURING COMPANY,
AUG. 6, 1902.

MR. J. R. KEHLOR,
GEN. WEST. AGT., BRAUER LINE,
135 Adams St., Chicago.

DEAR SIR:

Referring to telephone conversation recently, beg to advise that we expect to make shipments to Hamburg before expiration of our contract, and will do all in our power to complete same. If, owing to insurmountable obstacles, we do not complete the contract before its termination, we assure you it will be our endeavor to satisfy you with balance of tonnage for early 1903 shipment. Trusting this is satisfactory, we are

Yours truly,
THE PLANO MFG. CO.,
By A. G. HUCKIN,
Traffic Manager."

"AUG. 13, 1902.

THE PLANO MFG. CO.,
Chicago, Ill.

DEAR SIRS:

Referring to yours of the 6th inst., we beg to say that we have a contract with you, which speaks for itself, and shall insist that you carry it out to the letter. If you fail to carry it out we shall render you bills in the usual way for dead freight for whatever amount is due us. We have reserved space for you right along on our boats, and you have been acquainted with this fact.

Yours very truly."

"THE PLANO MANUFACTURING COMPANY.
AUG. 14, 1902.

MR. JAS. R. KEHLOR,
c/o BRAUER LINE,
135 Adams St., Chicago.

DEAR SIR:

Yours of the 13th inst. received. We wrote you on the 6th inst., in line with your wishes, as expressed

verbally to the writer; consequently we cannot understand why you should speak one way and write another. Has anything happened? We know how the contract reads and it was made in good faith and we shall do all we can do to comply with its terms. If we do not satisfy you, it will not be our fault.

Yours truly,

THE PLANO MFG. CO.,

By A. G. HUCKIN,

Traffic Manager.''

At the close of the plaintiff's evidence the court, on motion· of defendant's attorneys, instructed the jury to find the issues for the defendant, and entered judgment accordingly, from which judgment this appeal is taken.

STEELE & THOMPSON and CHARLES HUGHES, for appellant.

DAVID F. MATCHETT and ARCHIBALD CATTELL, for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

The ground upon which the instruction directing a verdict for the defendant was given at the close of the plaintiff's evidence appears to have been that the plaintiff failed to prove the existence of a binding contract. Whether or not the letters in evidence constitute such a contract is the main question presented on this appeal.

It is contended in behalf of defendant that these letters "contain no words of promise," that the alleged contract is void for want of mutuality, that where the promise of one party is the consideration for the promise of the other the promises must be, what it is argued they are not in this case, concurrent and obligatory at the same time: citing Vogel v. Pekoc, 157 Ill. 339-342. The first letter of the steamship com-

pany, plaintiff, addressed to the defendant and dated November 23, 1901, refers to a prior "engagement" which the writer begs to "confirm" in writing. Some attempt is made to question the meaning of the word engagement. It is defined in the last sentence of the letter by the writer as a "contract," and the Century Dictionary defines it as "an agreement  *  *  *  a contract, an undertaking." This engagement is for the "entire season's shipment" of the defendant for 1902 to consist, it is stated, of between 3,000 and 4,000 tons of agricultural implements which are to be shipped at an ocean rate of 5½ cents per cubic foot from Philadelphia to Hamburg, with the privilege of using the steamship's New York service at the same rate. Three days later, November 26, 1901, the defendant acknowledges "receipt of the contract for season's requirements to Hamburg" and states that "the contract seems to be in accordance with our understanding, except that our shipments will probably commence in December of this year, in which event we understand the contract as made will apply." This modification plaintiff accepts by letter of November 27, 1901. It is clear therefore from these statements by both plaintiff and defendant, that each of them understood they had entered into a "contract," the terms of which were substantially embodied in the letters referred to. Some details of the contract are not expressly stated in the two letters, which are nevertheless clearly implied from what is stated. The first letter states the contract with sufficient clearness to be that the steamship company has engaged or contracted with the Plano Company for the latter's entire season's shipments of agricultural implements, that these shipments are to consist of between 3,000 and 4,000 tons, that they are to・be transported by the steamship company from Philadelphia or New York to Hamburg, and that the defendant is to pay for the service an ocean rate of 5½ cents per cubic foot. The Plano Company states by its letter of November 26,

1901, in reply that it so understands the contract, except that it will probably commence its shipments in December of 1901, instead of waiting until 1902. It thus interprets the contract as an agreement on its part to ship the quantity specified within the time, at the rate and in the manner stated in plaintiff's first letter, which letter contained also the further agreement that plaintiff should keep defendant posted as to sailing dates of its steamers and that defendant should notify plaintiff of the space required for each steamer. In Morier v. Moran, 58 Ill. App. 235-239, it is said that "what is implied in a contract is as much a part of the contract as what is expressed."

If, however, there might be room for controversy as to the meaning of the contract as embodied in the first three letters referred to, it must be deemed to have been removed by the construction and interpretation of the parties themselves expressed in subsequent letters, that of April 5, 1902, from the steamship company, the reply thereto of the Plano Company dated April 16, 1902, the letter of June 23, 1902, from the steamship company, and notably the reply thereto of the Plano Company dated June 25, 1902, and the letter of the latter company dated August 6, 1902. In the letter dated June 25, 1902, the defendant states that "we made our contract with you in good faith and as we supposed put ourselves on the safe side by contracting for an amount equal to 75% of what we shipped in 1901." The defendant Plano Company admits a contract with the plaintiff to ship "an amount equal to 75%" of what it shipped in 1901, which can only refer to the "between 3,000 and 4,000 tons" described as the "season's shipments" in the original writing of November 23, 1901. It is always permissible where the parties to a contract have by their own conduct or statements placed a construction upon or given an interpretation to a contract the meaning of which may be deemed in any respect doubtful or uncertain, for the courts to look to such con-

struction or interpretation for aid in ascertaining its meaning. Consolidated Coal Co. v. Schneider, 163 Ill. 393-396; People v. Murphy, 119 Ill. 159-166; Street v. Chi. Wharfing Co., 157 Ill. 605-614.

It seems to be appellee's contention that the letter of November 23, 1901, was not a contract, even if the parties did so describe and treat it, but that it was only an offer on the part of plaintiff which might or might not be accepted by defendant. That letter, however, does not purport to be such an offer. It purports to "confirm" an agreement before made and to state the terms of such agreement which defendant in reply states to be "in accordance with our understanding." In cases cited by defendant's counsel it was in effect held that certain alleged contracts there involved, imposed no obligation on one or both of the parties. Schlitz Brewing Co. v. Komp, 118 Ill. App. 566; Wrisley Co. v. M. A. Works, 107 Ill. App. 379; Am. Cotton Oil Co. v. Kirk, 15 C. C. A. 540. A case especially relied upon by defendant is Chicago & Great Eastern Ry. Co. v. Dane, 43 N. Y. 240. In that case the contract was in part as follows:

"We hereby agree to receive in this port, either from yard or vessel, and transport to Chicago by canal and rail or the lakes, for and on account of the Chicago & Great Eastern Railway Company, not exceeding 60,000 tons gross in and during the months of April, May, June, July and August, 1864, upon the terms and for the prices hereinafter specified (which was accepted by the other party in the words): 'In behalf of this company I assent to your agreement and will be bound by its terms.' "

It was held that this instrument did not bind the plaintiff to furnish *any* iron for transportation, that the word "agree" meant only "offer" and that "the letter was a mere proposition to the plaintiff for a contract to transport for it any quantity of iron upon the terms specified not exceeding 60,000 tons," that the plaintiff was at liberty to accept the proposition

for any specified quantity not beyond that so limited, that the "assent to your agreement" amounted to nothing more than "the acceptance of an option by the plaintiff for the transportation of such iron by the defendant as it chose," that there was therefore no consideration for any promise of the defendant, that the breach of such promise furnished no foundation for the action, and that the fact the defendant after the letters were written transported iron for the plaintiff, "did not oblige the plaintiff to furnish any additional quantity." In the case at bar, however, the agreement is specific for the entire season's shipments of between 3,000 and 4,000 tons of agricultural implements for 1902, a very different contract from that under consideration in the Danes case. A contract to receive and transport "not exceeding" a specified quantity of material is widely different from a contract like the one at bar where one party agrees to ship and another to transport a certain definite quantity within a definite time at a definite price. We find no lack of mutuality or definiteness in the contract and it is, we think, valid and binding equally upon both parties, according to its terms.

It appears from the evidence that the Plano Company did ship two hundred tons of the amount it so contracted to ship, and there is evidence fairly tending to show that the plaintiff was unable to fill the space in its steamers and suffered loss in consequence of defendant's failure to perform its agreement to ship not less than 3,000 and not more than 4,000 tons.

For the reasons indicated we are of opinion the Superior Court erred in directing the jury to return a verdict for the defendant. The judgment of that court will therefore be reversed and the cause remanded.

*Reversed and remanded.*

BAKER, J.

I agree with the majority of the court that the par-

ties to this suit, by their letters of November 23, 26 and 27, 1901, entered into and made a contract. I do not agree with the majority as to the terms of the contract thus made. Omitting the clause, "season's shipment between 3,000 and 4,000 tons," found in the letter of November 26, the contract made by the letters was that the steamship company should carry, at the rates mentioned, from Philadelphia or New York to Hamburg, "the entire season's shipments of agricultural implements for 1902," of the Plano Company.

The contract, excluding the clause above quoted, bound the steamship company to carry all the agricultural implements the Plano Company, for their own account, and in the reasonable prosecution of their own business, had occasion to ship to Hamburg in 1902. It bound the Plano Company to ship by the steamship company all the agricultural implements it had occasion, in the prosecution of its business, to ship to Hamburg in 1902. The clause "season's shipments between 3,000 and 4,000 tons" may, I think, be regarded as a mere estimate by the parties of the amount of agricultural implements the business of the Plano Company would require it to ship to Hamburg in 1902. If, however, the clause above quoted is to be construed as a promise by the Plano Company to ship 3,000 tons of agricultural implements to Hamburg in 1902 by the steamship company, although its business required it to ship only a part of that amount, and as an agreement between the parties that the steamship company should be bound to carry but 4,000 tons, although the business of the Plano Company required it to ship more than that amount of implements to Hamburg in 1902, the clause and the preceding words of the contract are repugnant and inconsistent and the first words are to be followed and the later clause rejected.

The evidence shows that the Plano Company shipped in 1902, by the steamship company, its en-

tire season's shipments of agricultural implements to Hamburg, amounting to 200 tons. It has not violated its contract with the steamship company, and the judgment of the Superior Court, should, therefore, in my opinion, be affirmed.